556 So.2d 1132 (1989)
Vincent R. ANTONELLI, Mary A. Antonelli and Antonelli Construction Co., Inc., Appellants,
v.
Ralph F. SMITH, Appellee.
No. 88-1514.
District Court of Appeal of Florida, Third District.
December 5, 1989.
Rehearing Denied March 13, 1990.
Harold A. Turtletaub, Miami, for appellants.
Cunningham, Albritton, Lenzi, Warner, Bragg & Miller and Alfred O. Bragg, Marathon, for appellee.
Before NESBITT, BASKIN and COPE, JJ.
COPE, Judge.
Appellants Vincent and Mary Antonelli and Antonelli Construction Co., who were plaintiffs below, appeal an adverse final judgment entered after a nonjury trial in an action to reform a deed. We affirm the dismissal but specify that it is without prejudice.
The appellants, who will be collectively referred to as the Antonellis, in 1981 owned a large lot at the end of a canal in the Marathon area, on which they ultimately initiated development. Appellee Ralph F. Smith was President of Key Colony Beach Golf Club, Inc. ("Key Colony"), a landowner and developer in the same geographic area.
During 1981, Mr. Smith was involved in negotiations with the State of Florida with respect to a dredge and fill permit. The details of that negotiation are not pertinent here, except that Mr. Smith's agreement with the State of Florida provided that certain canal bottom land in three canals would be conveyed to the owners of the canal-front lots. The Antonellis' lot was located on one of those canals.
In 1981, pursuant to the agreement, Mr. Smith caused Key Colony to execute a quitclaim deed in favor of the Antonellis. By the terms of the quitclaim deed, the Antonellis were given the canal bottom along a portion of their canal-front lot. Key Colony acted unilaterally and did not inform the Antonellis of the quitclaim deed. The expenses associated with the quitclaim deed were borne by Key Colony.
At the time the conveyance was made, Smith believed that the title to the canal bottom was held by Key Colony. His intention was that the owners of the canal front property would also hold title to the submerged land immediately in front of their property, and that, when the upland was sold, the submerged land would be conveyed with it.
By 1984 the Antonellis had begun development of a condominium project, Treasure Cay, on their canal front lot. The canal front lot was not bulkheaded, and had eroded some twenty feet inside the property line, as a result of which the condominium *1133 project did not meet the necessary setback requirements. When the regulatory authorities discovered the setback violation, they halted the project. In order to bring the project into compliance, Antonelli needed to build a bulkhead on the original lot line and refill his lot out to that line. The State of Florida informed Antonelli that Smith had a current dredge and fill permit which would allow the work to be done, if Mr. Smith were willing to make the permit available.
Antonelli met with Smith and Smith consented to allow his dredge and fill permit to be used. Smith also informed Antonelli about the 1981 quitclaim deed conveying canal bottom land to the Antonellis.
On the basis of Mr. Smith's agreement to allow the permit to be used, and the newly acquired information about the 1981 quitclaim deed, the Antonellis built a bulkhead and refilled the property out to the bulkhead line. In the belief that they owned the canal bottom described in the quitclaim deed, the Antonellis also constructed a concrete dock, three wooden piers, and several wooden mooring dolphins. The estimated value of the bulkhead, fill, and docks was $200,000.
Eventually the Antonellis lost the Treasure Cay project through foreclosure. However, because the mortgage deed did not encumber the canal bottom, the foreclosure did not affect title to the canal bottom and docks.
In 1986 the Antonellis discovered that the canal bottom had never been owned by Key Colony, but had actually been owned by Mr. Smith individually. The Antonellis requested a corrective deed from Mr. Smith individually, to convey the same canal bottom to the Antonellis, but Smith refused. Smith contended that the intention had always been to have the current upland owner also hold title to the adjoining canal bottom. In January, 1987 Mr. Smith executed a new quitclaim deed in favor of the 1987 lot owners of record along the canal. By then the new owners of Treasure Cay had completed the project, so the 1987 quitclaim deed conveyed the canal bottom to Treasure Cay instead of the Antonellis.[1]
The Antonellis filed suit for reformation of the 1981 quitclaim deed, requesting that the name of the grantor in the deed be corrected to read Ralph F. Smith, as grantor, instead of Key Colony. At the conclusion of a bench trial, the court granted the defendants' motion for involuntary dismissal. The trial court reasoned that reformation would not be available because the 1981 conveyance was gratuitous.
The real debate in the present case is over the docks and the land they are situated on. To the extent that the Antonellis built bulkheads and refilled the property, that land, and the expense associated with bulkheading and filling, has been lost through the foreclosure. The docks are, however, a valuable improvement and the disposition of the canal bottom on which the docks are located requires a separate analysis.
We are unable to subscribe to the trial court's conclusion that reformation is unavailable, on the present facts, where the 1981 transfer was gratuitous.[2] Assuming arguendo that the transfer was purely gratuitous as between Smith and Antonelli, Antonelli changed position in reliance on the gratuitous transfer. That being so, reformation is available. Tampa Northern R.R. v. City of Tampa, 104 Fla. 481, 485, 140 So. 311, 313 (1932); accord Kelly v. Threlkeld, 193 So.2d 7, 10 (Fla. 4th DCA 1966), cert. denied, 201 So.2d 553 (Fla. 1967); see Heisler v. Florida Mortgage Title & Bonding Co., 105 Fla. 657, 142 So. 242, 246 (1932). It is the change of position in reliance on the conveyance which distinguishes the present case from the ordinary gratuitous conveyance, where there has been no such change of position. See Providence Square Ass'n, Inc. v. Biancardi, 507 So.2d 1366, 1370 (Fla. 1987); cf. Ubersee Handels Gesellschaft, Inc. v. Semenjuk, *1134 540 So.2d 136, 137-38 (Fla. 5th DCA 1989) (promissory estoppel); Elgin Nat'l Indus. v. Howard Indus., 264 So.2d 440, 441 (Fla. 3d DCA 1972) (same). We conclude, therefore, that Antonelli has made out a prima facie case for relief. However Smith's actions are characterized, the critical factor is that Antonelli changed position by erecting improvements on land Smith intended to, and attempted to, give to Antonelli.
Smith is correct, however, in arguing that the action had to be dismissed because the Antonellis failed to join indispensable parties. The missing parties are Treasure Cay Condominium, as present owner of the canal front lot formerly owned by the Antonellis, and Key Colony, the grantor under the original quitclaim deed. As a practical matter, the Antonellis' suit is intended to divest Treasure Cay of its rights under Smith's 1987 quitclaim deed. If the 1981 quitclaim deed were reformed as the Antonellis requested, Smith would be deemed to have conveyed his entire interest in the canal bottom to the Antonellis in 1981. That being so, he would have no interest remaining which could be conveyed in the 1987 quitclaim deed. In order for Treasure Cay to be bound by the adjudication, and in order for the Monroe County property records to properly reflect the state of the land title, Treasure Cay must necessarily be a party. See Bermudez v. Bermudez, 421 So.2d 666, 668 (Fla. 3d DCA 1982). Likewise, before Key Colony could be removed as grantor under the deed to be reformed, it must be joined in the suit. Skinner v. Simms, 355 So.2d 448, 450 (Fla. 1st DCA 1978). A dismissal for failure to join indispensable parties is, however, a dismissal without prejudice. See Commodore Plaza v. Saul J. Morgan Enterprises, Inc., 301 So.2d 783 (Fla. 3d DCA 1974), case dismissed, 308 So.2d 538 (Fla. 1975).
Because there may be further proceedings after indispensable parties are joined, we note that this is a proceeding in equity, and the question whether to grant relief is addressed to the sound discretion of the court, after weighing all of the interests involved. Thus, "[h]e who asks for the remedy must make an equitable showing. If his case is weak in its equities, reformation will be denied." Smith v. Pattishall, 127 Fla. 474, 129 Fla. 498, 176 So. 568, 576 (1937) (citation omitted).
The land survey in the present case shows that the docks are affixed to the bulkhead on the canal front lot. The only access to the docks is across the land now occupied by the Treasure Cay Condominium. Reformation is not available where that remedy would accomplish a useless act, and would necessarily be inappropriate where the effect of the remedy would be to convey land to which the Antonellis would have no right of access. Since the parties have not addressed that issue, we do not reach it. The trial court is free to weigh the equities in arriving at a sound decree.[3]
We affirm the dismissal but specify that it is without prejudice.
Affirmed as modified.
NESBITT, J., concurs.
BASKIN, Judge (dissenting).
I would also affirm the order dismissing the Antonellis' action for reformation, but would do so with prejudice. The record demonstrates that appellee Ralph F. Smith granted the deed for his own purposes,[1] without monetary consideration, and without informing the Antonellis. A gratuitous conveyance does not support an action by the grantee to reform the deed. Providence Square Ass'n v. Biancardi, 507 So.2d 1366 (Fla. 1987); Smith v. Pattishall, 127 Fla. 474, 129 Fla. 498, 176 So. 568 *1135 (1937); Triesback v. Tyler, 62 Fla. 580, 56 So. 947 (1911); Hardcastle v. Mobley, 143 So.2d 715 (Fla. 3d DCA 1962). The record discloses that although the deed recited a nominal consideration, none was actually given. The purely voluntary nature of the conveyance precludes an action for reformation.
Even if circumstances justifying reformation did exist, the trial court was correct in refusing to reform the deed in question. Mistake is a ground for reformation of a deed only when the mistake is mutual. American Fire & Indem. Corp. v. State Farm Auto. Ins. Co., 483 So.2d 122 (Fla. 1st DCA 1986); Hardaway Timber Co. v. Hansford, 245 So.2d 911 (Fla. 1st DCA 1971); Sobel v. Lobel, 168 So.2d 195 (Fla. 3d DCA 1964); see also Alexander v. Kirkham, 365 So.2d 1038 (Fla. 3d DCA 1978), cert. denied, 375 So.2d 911 (Fla. 1979). Smith mistakenly signed the deed in his corporate capacity when he owned the property individually, but the mistake was his alone, and not a mutual mistake.
The majority cites the Antonellis' detrimental reliance on the first deed as grounds for reformation. In reaching its conclusion, the majority fails to consider that reliance is not a substitute for examining the record of title. One may not ignore readily discoverable facts.
The Antonellis are charged with constructive notice of the true ownership of the property under recording statutes. § 695.01, Fla. Stat. (1987). Those statutes provide constructive notice "not only of [an instrument's] own existence and contents, but also of such other facts concerned with the instrument as would have been ascertained from the record if it had been examined and if inquiries suggested by it had been prosecuted." Leffler v. Smith, 388 So.2d 261, 263 (Fla. 5th DCA 1980), review denied, 397 So.2d 778 (Fla. 1981); Zaucha v. Town of Medley, 66 So.2d 238 (Fla. 1953); Maule Indus. v. Sheffield Steel Prod., 105 So.2d 798 (Fla. 3d DCA 1958), cert. denied, 111 So.2d 41 (Fla. 1959). If the Antonellis had examined the chain of title before commencing construction of the dock, they would have discovered that Smith individually, not his corporation, owned the property. The Antonellis would have been warned not to rely on the transfer of the property; consequently, they are estopped from seeking reformation of the deed. Cf. Department of Transp. v. Ronlee, 518 So.2d 1326 (Fla. 3d DCA 1987) (appellant waived right to reformation or rescission of contract by knowing of mistake ten days before commencement of construction and performing under contract for twenty-one months after such knowledge), review denied, 528 So.2d 1183 (Fla. 1988); Thompson v. Gross, 353 So.2d 191 (Fla. 3d DCA 1977) (appellants estopped to institute action to reform mortgage by accepting payments due under a mortgage for seventeen months before discovering mistake and by delaying another ten months before instituting suit to reform the instrument).
For these reasons, I would affirm the trial court's dismissal of Antonelli's action without leave to amend.[2]
NOTES
[1] Smith now owns a unit at Treasure Cay.
[2] For these purposes we treat the transfer as gratuitous, although an argument is available that the Antonellis are third-party beneficiaries of Smith's agreement with the State of Florida. Smith's agreement to convey the canal bottoms was part of the consideration for a dredge and fill permit.
[3] The trial court is not limited to considering only the question of access. While the Antonellis spent money in constructing the docks, they also received substantial value from Smith in the form of fill derived from Smith's dredge and fill permit. The equities of Treasure Cay, and conceivably third persons, must also be considered. These permissible considerations are intended to be illustrative rather than exhaustive, and should be considered in the first instance by the trial court in determining whether to grant equitable relief.
[1] The State of Florida required the grantor to convey the property in order to obtain a permit to dredge the bay bottom.
[2] My resolution of this issue would make it unnecessary to decide whether the owners of the condominium units whose docks overlie the subject property are indispensible parties.