566 So.2d 838 (1990)
CHANRAI INVESTMENTS, INC., and the American Bank of Merritt Island, Appellants/Cross-Appellees,
v.
George A. CLEMENT, et al., Appellees/Cross-Appellants.
No. 89-480.
District Court of Appeal of Florida, Fifth District.
August 23, 1990.
Rehearing Denied September 28, 1990.
Marsha Griffin Rydberg of Rydberg, Goldstein & Bolves, P.A., Tampa, for appellants/cross-appellees.
Norman P. Freedman of Norman P. Freedman, P.A., Jacksonville and Richard B. Moritz, Largo, for appellees/cross-appellants George A. Clement and Naomi Fields.

ON MOTION FOR REHEARING
PER CURIAM.
In response to appellants' motion for rehearing, we withdraw our prior affirmance without opinion and substitute therefor the following opinion. The issue framed by the appellants on this appeal is whether the trial court erred in denying reformation based upon the following legal finding reflected in the final judgment:
4. As a matter of law, reformation does not lie in this action in that Kingsland was not a party to the instrument sought to be reformed. This Court has no authority to reform a wild deed by adding a corporate grantor to such a deed and by supplying the necessary witnesses and/or corporate seal and notarization required by Florida law for conveyances of real property.
This appeal is centered on transactions between closely identified entities and a *839 resulting error in a deed. The underlying facts indicate that in the mid-1970's, the appellee, Clement, and his brother-in-law, Petersen, were in business together operating fruit orchards and later doing land development. They added a third partner, Lenhardt. These individuals took over an Illinois corporation called Kingsland, Inc. and added their land holdings to Kingsland's. Kingsland thus owned the property in controversy (section 32). In 1979, the property was conveyed back to Petersen and Lenhardt individually and was mortgaged to Metropolitan Bank. Another Petersen/Lenhardt entity, Ocala Properties, Limited, owned four other sections which were also mortgaged to Metropolitan. In 1980, the property was reconveyed to Kingsland, Inc. In December of 1980, Ocala Properties conveyed its four sections to another Petersen corporation, Ferndale Estates, Inc. Ocala Properties also conveyed section 32 to Ferndale Estates, Inc. even though title to section 32 was actually held by Kingsland. Petersen testified that this conveyance by Ocala rather than by Kingsland was a mistake. Later, still not having discovered the error, Peterson, acting on behalf of Ferndale, conveyed all the above-referenced property to yet another Petersen entity, Fairwood Villas, Inc. Fairwood mortgaged all the property for a development loan from American Bank. American Bank apparently failed to pick up the title defect. By August, 1982, American Bank had begun foreclosure proceedings on the subject property and, at that time, learned that title was in Kingsland, Inc. The bank requested, and Kingsland, through its sole stockholder (Petersen) agreed to cure the defect. Kingsland supplied a fee simple deed to Ferndale, which in turn quitclaimed its interest to Fairwood Villas. Before the foreclosure sale, an arrangement was made with the other named appellant, Chanrai Investments, Inc., to purchase the property.
In the meantime, Clement had filed suit against Petersen and Kingsland based on an alleged default on a promissory note in an apparently unrelated transaction. A judgment in favor of Clement was rendered in Pinellas County and, on November 30, 1982, Clement recorded his judgment lien. Clement opposes reformation of the December, 1980 Ocala Properties' conveyance of section 32 to Ferndale reflecting that the true grantor was Kingsland, Inc. because a 1980 conveyance of this Kingsland asset would remove it from Clement's 1982 judgment lien.[1]
The purpose of reformation of an instrument is to make the instrument accurately express the true intention or agreement of the parties to the instrument or agreement at the time of its execution. Providence Square Ass'n, Inc. v. Biancardi, 507 So.2d 1366 (Fla. 1987). Kingsland, Inc. was neither a party to the instrument nor the agreement. The most that can be said is that Peterson was a stockholder of Kingsland, Inc.[2] Kingsland, Inc. however is a legal entity and the only owner of the property sought to be reached by this reformation. The individual stockholder has neither legal nor equitable title to the property.[3] This is not altered by the fact that a single stockholder may own all the stock of the corporation.[4] Further there are no facts alleged or proved in this case that could subject the true owner's interest in the property to appellant's claim.[5]
*840 Appellant's reliance on Antonelli v. Smith, 556 So.2d 1132 (Fla. 3d DCA 1989), is misplaced. Although Antonelli talks of reformation, it is really a case of estoppel. Further, the remedy of reformation was apparently conceded  the issue was whether a gratuitous conveyance was subject to reformation, not whether reformation could reach title to property not in the grantor of the instrument. At least in Antonelli, Smith individually participated in the transaction by agreeing with the state, in order to obtain a dredge and fill permit, to convey the property to Antonelli. Smith ultimately had his corporation, Key Colony Beach Golf Club, Inc., convey the property to Antonelli when the title was actually in Smith individually. Because Antonelli had relied on Smith's assurance that the property had been properly conveyed to him, and had expended over $200,000 in reliance on such assurance, when it later proved that title was still in Smith, reformation was held to be a proper remedy even though there was no consideration for the deed from Antonelli. Smith was a party to the agreement, though not the instrument, and was the sole cause of Antonelli's damage if the deed was not reformed.
In the case at bar appellant had no knowledge of the true owner and dealt with Peterson only individually and not as a representative of Kingsland, Inc. This is not a case where the parties to the agreement and/or instrument intended, but failed, to have Kingsland subject its property to the bank's mortgage. The parties were unaware at the critical time that Kingsland owned the property. Appellant is not seeking to use reformation to enforce a prior agreement not carried out in the transaction because of mistake, but rather to backdate a conveyance from a third party that, in hindsight, they wish they had obtained earlier. This would be a quantum leap in the law of reformation. As stated in Providence:
Notably, in reforming a written instrument, an equity court in no way alters the agreement of the parties. Instead, the reformation only corrects the defective written instrument so that it accurately reflects the true terms of the agreement actually reached.
Providence at 1370.
Since this record does not reflect that either Kingsland, Inc., the owner, or Peterson, as president of Kingsland, Inc., ever agreed to have Kingsland, Inc.'s property transferred to Ocala Properties, Ltd., the conclusion of the trial judge, although predicated on a categorical proposition that is overly broad ("Reformation can never lie to correct the nomenclature of the original parties"), was correct under the instant facts.
Another reason that reformation will not lie in this case is the fact that all parties necessary for reformation were not before the court. The original grantor, Ocala Properties, and the original grantee, Ferndale, are not parties to the reformation action. The Second District Court in Insua v. Otero, 524 So.2d 1142 (Fla. 2d DCA 1988) held that it was error to dismiss a party who had executed the instrument sought to be reformed. So, too, because Ocala Properties and Ferndale were the original grantor and grantee, they are necessary parties to an action seeking to reform that very deed.
AFFIRMED.
COBB, W. SHARP and HARRIS, JJ., concur.
NOTES
[1] There is apparently no evidence that Clement relied on the existence of this asset of Kingsland at any time.
[2] Although appellant states in its brief that "at all times relevant to this proceeding, until it was acquired by Chanrai in July 1985, the property was owned either by C. Thomas Peterson ("Peterson") or by entities controlled by him," the record indicates otherwise. The record reflects that on January 2, 1978, the property was owned by C. Thomas Peterson and Peter M. Lenhardt and that on October 14, 1980, Peterson and Lenhardt conveyed the property to Kingsland, Inc.
[3] Vol. 8, Fla.Jur.2d, Business Relationships § 10; § 607.011(2)(b), Fla. Stat. (1989).
[4] St. Petersburg Sheraton Corp. v. Stuart, 242 So.2d 185 (Fla. 2d DCA 1970). In any event there is no evidence that Peterson was the sole stockholder of Kingsland, Inc. when the conveyance from Ocala Properties, Ltd. to Ferndale Estates, Inc. was made.
[5] There was no effort to prove that Kingsland, Inc. was the "alter ego" of Peterson as in Dania Jai-Alai Palace, Inc. v. Sykes, 450 So.2d 1114 (Fla. 1984).