# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 07-0075


WMC MORTGAGE CORPORATION

VERSUS

RAYMOND EUGENE WEATHERLY AND
DONNA LOUISE WEATHERLY


\*\*\*\*\*\*\*\*\*\*\*\*


APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT,
PARISH OF CALCASIEU, NO. 2003-5474
HONORABLE G. MICHAEL CANADAY, DISTRICT JUDGE


\*\*\*\*\*\*\*\*\*\*\*\*


## JIMMIE C. PETERS
## JUDGE


\*\*\*\*\*\*\*\*\*\*\*\*


Court composed of Ulysses G. Thibodeaux, Chief Judge, Jimmie C. Peters, and Elizabeth A. Pickett, Judges.


**REVERSED.**


Charles Schrumpf
Schrumpf & Schrumpf, PLC
3801 Maplewood Drive
Sulphur, LA 70663
(337) 625-9077
COUNSEL FOR PLAINTIFF/APPELLEE:
    WMC Mortgage Corporation

Richard D. Moreno
E. R. Robinson, III
Robinson and Moreno, L.L.C.
One Lakeshore Drive, Suite 1135
Lake Charles, LA 70629
(337) 433-9535
COUNSEL FOR DEFENDANT/APPELLANT:
    Donna Louise Weatherly

PETERS, J.

The defendant, Donna Louise Weatherly, appeals a trial court judgment reforming a conventional mortgage and promissory note in favor of the plaintiff, WMC Mortgage Corporation (WMC Mortgage), by judicially recognizing that her separate property is encumbered by the conventional mortgage and that the indebtedness evidenced thereby is a community debt even though she never executed either instrument. For the following reasons, we reverse.

## DISCUSSION OF THE RECORD

The facts surrounding the events leading up to this litigation are generally not in dispute and begin with the marriage of Donna Louise Weatherly and Raymond Eugene Weatherly on May 7, 1982. Almost twelve years later, on March 14, 1994, Mrs. Weatherly acquired full ownership of a tract of immovable property located in Section 27, Township 10 South, Range 9 West, in Calcasieu Parish, Louisiana. There exists no dispute over the fact that the property is Mrs. Weatherly's separate property.

Despite its separate status, Mr. and Mrs. Weatherly used the property as security for a loan from Southern Mortgage Company (Southern Mortgage) in October of 1996, when both executed a conventional mortgage and promissory note in favor of Southern Mortgage. The transaction occurred on October 15, 1996, with the property being used as security for a loan of $30,000.00.

On November 4, 1997, Mr. Weatherly executed a conventional mortgage and promissory note in favor of WMC Mortgage using Mrs. Weatherly's same separate property. The difference between the WMC Mortgage transaction and the Southern Mortgage transaction is that in the WMC Mortgage transaction, Mrs. Weatherly did not sign the mortgage or the note. In exchange for Mr. Weatherly's execution of the conventional mortgage and note, WMC Mortgage loaned him $46,400.00, repayable

in monthly payments of $468.02. The Settlement Statement executed by Mr. Weatherly reflects that after settlement charges totaling $6,811.80 were deducted from the amount loaned, an additional $28,818.00 was disbursed to pay the holder of the Southern Mortgage note.[1] Other disbursements indicated by the Settlement Statement included $3,243.00 to Bank One, $960.00 to Campo, $312.00 to K & B Drugs, and $422.00 to an entity for child support. The remaining balance of approximately $6,000.00 was disbursed directly to Mr. Weatherly.[2] Mr. Weatherly testified that he used the cash to pay Calcasieu Marine Bank the balance owned on a loan which he had incurred to purchase a mobile home that he used as rental property. According to Mr. Weatherly, the mobile home, which had been purchased during his marriage to Mrs. Weatherly, burned and was not covered by insurance.

The Weatherlys initially made the monthly payments to WMC Mortgage as required by the November 4, 1997 transaction, but discontinued payments sometime in 2003.[3] Coincidentally, the Weatherlys obtained a divorce on July 26, 2004. Thereafter, when Mrs. Weatherly refused to agree to recognize that her separate property was properly pledged as security for the loan obtained by her former husband, WMC Mortgage brought the instant action to reform the mortgage and note signed by Mr. Weatherly on November 7, 1997, to reflect that Mrs. Weatherly was a party to the transaction, that she understood that her separate property was to be

---

[1]The check drawn on the escrow account of the closing attorney reflects that the amount paid to the mortgage holder was $29,245.56. However, this discrepancy does not affect the analysis of the transaction.

[2]Mr. Weatherly testified that he received $6,088.00 at closing. If he received this amount, the Settlement Statement is not totally accurate. However, this discrepancy does not affect the analysis of the transaction.

[3]All payments to WMC Mortgage were made with community funds.

used as security for the loan, and that the proceeds were used to extinguish community debts.

WMC Mortgage filed suit against both Mr. and Mrs. Weatherly on October 13, 2003, and the matter was tried in stages over a period of over more than one year.[4] Upon completion of the evidence, the trial court issued written reasons for judgment granting WMC Mortgage the relief it requested. After the trial court denied Mrs. Weatherly's motion for new trial, she perfected this appeal,[5] asserting two assignments of error:

1. The trial court erred by rendering judgment ordering the equitable "reformation" of a conventional mortgage to *add* an owner-spouse as a new mortgagor where the original mortgage was executed only by a non-owner spouse over the owner-spouse [sic] objections and where the lender specifically rejected its counsel's advice to have the owner spouse execute the mortgage.

2. The trial court erred by rendering judgment ordering the equitable "reformation" of the related promissory note to *add* an owner-spouse as a co-obligor where the original mortgage note was executed only by a non-owner spouse over the owner-spouse [sic] objections and where the lender specifically rejected its counsel's advice to have the owner spouse execute the mortgage note.

**OPINION**

We first recognize that because the property was Mrs. Weatherly's separate property, and Mr. Weatherly had no interest in the property, Mr. Weatherly had no right to mortgage the property. Louisiana Civil Code article 3290 provides that "[a]

---

[4]The first hearing occurred February 3, 2005; after taking some evidence, the matter was then left open. The evidentiary portion of the trial was completed on June 2, 2005, and a final hearing on a motion for new trial was held on April 13, 2006. The delay in completing the record relates primarily to efforts by Mr. and Mrs. Weatherly to seek relief in the United States Bankruptcy Court for the Western District of Louisiana.

[5]Before completion of the trial, Mr. Weatherly was successful in obtaining relief in the United States Bankruptcy Court for the Western District of Louisiana. Therefore, the judgment of the trial court was rendered against Mrs. Weatherly only and she is the only party-appellant now before this court.

conventional mortgage may be established only by a person having the power to alienate the property mortgaged." One cannot validly mortgage another person's property. *State, Through Dep't. of Transp. & Dev. v. Wahlder*, 94-761 (La.App. 3 Cir. 12/7/94), 647 So.2d 481.

While it is undisputed that Mrs. Weatherly did not sign the November 4, 1997 mortgage and note, she did participate to a limited extent in the transactions of that date. The extent of her involvement in the November 4 transaction and the legal effect of her limited participation are the issues now before us on appeal.

Reformation is an equitable remedy that is available to correct errors or mistakes in written instruments only when the instruments as written do not reflect the true intent of the parties. *Agurs v. Holt*, 95 So.2d 644 (La.1957). In a reformation action the party seeking reformation bears the burden of establishing mutual error and mistake by clear and convincing proof. *Id.*

> A mutual mistake is a mistake shared by both parties to the instrument at the time of reducing their agreement to writing, and the mistake is mutual if the contract has been written in terms which violate the understanding of both parties; that is, if it appears that both have done what neither intended. The evidence of mutuality must relate to the time of the execution of the instrument and show that the parties then intended to say one thing and by mistake expressed another and different thing.

*Teche Realty & Inv. Co., Inc. v. Morrow*, 95-1473, p. 4 (La. App. 3 Cir. 4/17/96), 673 So.2d 1145, 1147 (citation omitted).

As a general rule, whether there is a mutual error is mainly a question of fact, and the trial court's factual finding cannot be disturbed on appeal unless it is clearly wrong. *Succession of Jones v. Jones*, 486 So.2d 1124 (La.App. 2 Cir.), *writ denied*, 489 So.2d 249 (La.1986). The manifest error or clearly wrong standard demands great deference for the trier of fact's findings. *Theriot v. Lasseigne*, 93-2661 (La.

4

7/5/94), 640 So.2d 1305. Where different, yet permissible, views of the evidence exist, the factfinder's choice from among the different permissible views cannot be manifestly erroneous or clearly wrong. *Stobart v. State, Through Dep't. of Transp. & Dev.*, 617 So.2d 880 (La.1993). "[T]he issue to be resolved by a reviewing court is not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one." *Id.* at 882.

In its written reasons for judgment, the trial court specifically recognized that Mr. Weatherly had no legal authority to mortgage his wife's separate property, but granted the requested reformation to the mortgage and the promissory note. The trial court in effect concluded that Mrs. Weatherly was a party to the underlying agreement to borrow the money and mortgage the property, making the following factual findings:

> The Plaintiff has met its'[sic] burden of proving mutual error by the clear and convincing evidence necessary for the Court [to] order a reformation of a contract. There was clear evidence that Mrs. Weatherly knew of the mortgage and intended on being a signatory. After being erroneously told she was not needed, she did not sign the document. While the marriage was ongoing payments were made from community funds to satisfy the obligation. It is only after domestic issues arose and the Husband and Wife separated that the mortgage issues arose. Evidence was presented proving Mrs. Weatherly was a part of the antecedent agreement and then somehow regrettably left off of the mortgage documents.
>
> . . . .
>
> There is no question that the funds described in the promissory note were received by the Plaintiffs. The parties stipulated that the funds secured were used by the Defendants to pay community debts. Because of this, the funds in controversy should undoubtedly be considered a community obligation because the funds were incurred for the "common interest of the spouses." The basis of these funds were the mortgaged property.

The trial court's factual finding that Mrs. Weatherly intended to sign the mortgage was not based on any evidence presented at trial.

5

In support of its claim for reformation of the mortgage and promissory note, WMC Mortgage offered the testimony of Eva Townsend, a loan closing secretary for the law firm that closed the November 4, 1997 loan. According to Ms. Townsend, both Mr. and Mrs. Weatherly were present at the loan closing, as was Robert Cupid, a loan officer representing WMC Mortgage. Ms. Townsend recalled going over the entire loan closing package with both Mr. and Mrs. Weatherly, including the proposed disbursements evidenced on the Settlement Statement. When she was informed that only Mr. Weatherly was to sign the conventional mortgage and note, Ms. Townsend immediately advised Mr. Cupid that Mrs. Weatherly's signature was necessary. However, her testimony does not clarify why she volunteered that advice to Mr. Cupid.[6] According to Ms. Townsend, Mr. Cupid "protested that no, they did not want her signature on any documents whatsoever" because of "credit reasons." Although Mrs. Weatherly did not sign the loan instruments, Ms. Townsend recalled that at no time did Mrs. Weatherly protest the use of her separate property as security during the loan closing proceedings.

Mrs. Weatherly testified on her on behalf. She acknowledged that she and her husband had used her separate property as security in securing the loan from Southern Mortgage, that the Southern Mortgage loan was a community obligation, and that the proceeds of the WMC Mortgage loan were used to pay that obligation as well as other community debts.[7] Additionally, she acknowledged that she was present when the November 4, 1997 mortgage and note were executed by her former husband. But she

---

[6] Ms. Townsend is not an attorney and certainly could not give Mr. Cupid legal advice. However, we are left only to speculate whether Ms. Townsend recognized the separate nature of the property or had other reasons for suggesting that Mrs. Weatherly should sign the document.

[7] The only disbursement from the November 4, 1997 transaction which seems to be questionable as to whether it is a community debt is the $422.00 child support payment. The record does not establish the exact nature of that obligation or even to whom it was paid.

disputed Ms. Townsend's testimony that she participated in the review of the loan documents. According to Mrs. Weatherly, she came to the closing to explain to the closing attorney that she did not want to mortgage her home.[8] She emphatically denied that she ever gave her husband permission to use her separate property as security for the loan, but did acknowledge that she and her husband had discussed the need to borrow the money. Still, she witnessed her husband signing the mortgage and note, and acknowledged that she knew that day that a mortgage had been taken out on her separate property.

Mr. Weatherly testified that while he and his former wife had discussed the loan, she expressed her opposition to it. However, he completed the transaction because he thought it was their best financial alternative and "as her husband [he] did it." He denied knowing that, because it was her separate property, he had no legal right to encumber it.

The only evidence that could be construed to support the trial court's factual finding that Mrs. Weatherly intended to sign the mortgage is Ms. Townsend's testimony that Mrs. Weatherly did not make an active protest when her separate property was mortgaged. Because there was no evidence other than Mrs. Weatherly's silence to support its factual findings, the trial court was clearly wrong in finding that Mrs. Weatherly intended to sign the mortgage. And based on the evidence presented at trial, it would not be reasonable to conclude that Mrs. Weatherly was a party to the underlying agreement to borrow the money and mortgage the property.

By adding Mrs. Weatherly to the mortgage and the promissory note, the trial court made a new contract, different from the one agreed to by Mr. Weatherly and

_____

[8]Mrs. Weatherly admitted that she never spoke to the closing attorney, but testified that she expressed her concerns to the receptionist and Ms. Townsend.

7

WMC Mortgage. *See In re Tutorship of Witt*, 99-646 (La.App. 3 Cir. 11/3/99), 747 So.2d 1142, *writ denied*, 99-3426 (La. 2/4/00), 754 So.2d 238. But a reformation can only be made to reflect the actual intention or agreement of the parties to the instrument at the time of its execution. Accordingly, the trial court erred in reforming the mortgage and the promissory note to add Mrs. Weatherly onto the documents when she was not a party to either the instruments or the underlying agreement. *See Chanrai Inv., Inc. v. Clement*, 566 So.2d 838 (Fla.App. 5 Dist., 1990), *review denied,* 576 So.2d 285 (Fla. 1991) and *Lusher v. Sparks*, 146 W.Va. 795, 122 S.E.2d 609 (1961).

WMC Mortgage argues that even if Mrs. Weatherly is not a party to the instruments or the underlying agreement, equitable reformation is also allowed as to the privies of the original parties, citing to *Placid Ref. Co. v. Privette*, 523 So.2d 865 (La.App. 1 Cir.), *writ denied,* 524 So.2d 748 (La.1988), and *First State Bank & Trust Co. of East Baton Rouge Parish v. Seven Gables, Inc.*, 501 So.2d 280 (La.App. 1 Cir. 1986), *writ denied,* 502 So.2d 103 (La.1987). Even assuming that an instrument may be reformed as to those who are privy to the original parties, WMC Mortgage's argument fails because Mrs. Weatherly is not a privy to Mr. Weatherly or WMC Mortgage. "A 'privy' is one who has succeeded to some right or obligation which one of the parties to the act derived through the act or incurred under it." *Commercial Germania Trust & Savings Bank v. White*, 81 So. 753, 755 (La.1919). Mrs. Weatherly has not succeeded to any right or obligation under the mortgage or the note, nor does she have any interest in them. Thus, she is not a privy within the meaning of the cases that WMC Mortgage cites.

## DISPOSITION

For the foregoing reasons we reverse the judgment of the trial court reforming the mortgage and the promissory note. We tax all costs to the plaintiff, WMC Mortgage Corporation.

**REVERSED.**