M. A. SMITH, as Liquidator of the Orlando Bank & Trust Company, v. W. A. PATTISHALL, as Trustee under the last will and testament of Mary O. Beeman, deceased.

176 So. 568.
Opinion Filed March 16, 1937.
Rehearing Denied November 4, 1937.

500

*Crawford & Gaskin* and *C. O. Andrews & Son,* for Plaintiff in Error;

*W. A. Pattishall,* for Defendant in Error.

Brown, J.—Lester A. Beeman was the owner of a small centrally located vacant lot, twenty feet wide North and South and about seventy-eight feet long East and West, in the City of Orlando. A suit was pending against him by the liquidator of the Orlando Bank & Trust Company to

recover some $15,000.00. On October 9th, 1931, just seventeen days before judgment was recovered against him in said suit, Beeman undertook to convey the lot to his mother, Mrs. Mary O. Beeman, but the description in the deed was defective, and the deed only actually embraced and conveyed a narrow strip of this land about seventy-eight feet long which comprised the South 1.29 feet of said lot, thus leaving the title in Lester Beeman to the North 18.71 feet of said lot. This error in description was not discovered until some time later. So the lien of the judgment, which was rendered against Beeman seventeen days later, and the execution thereon attached to the greater part of this lot, the title to which had never passed out of Lester Beeman, and was clearly subject to execution and sale under the bank's judgment.

Shortly thereafter the bank, or rather its liquidator, filed a suit in equity against Beeman and his mother's guardian to have the deed from Beeman to his mother declared fraudulent and void, on the ground that it was voluntarily made without consideration and in fraud of the Bank's debt and subsequent judgment. This case was decided in favor of the defendant Beeman, and a final decree rendered upholding the validity of the deed as against the particular attack made upon it in that suit. But as the deed there involved did not embrace the North 18.71 feet of the lot, to which the lien of the bank's judgment had already attached, it would appear that the decree thus rendered did not estop the bank, or its liquidator, from seeking to subject said omitted property to the payment of its judgment, and subsequent to said judgment the sheriff levied upon the North 18½ feet of the property thus omitted, without the bank's fault, from Beeman's deed to his mother.

Sometime after this, Mrs. Beeman having died, the ad-

ministrator *cum testamento annexo* of her estate filed his bill in the instant suit, praying that the description in the deed from Lester Beeman to his mother be reformed so as to embrace the approximately 18½ feet which had so been levied upon, and obtained an order restraining the sheriff from proceeding further with the sale until the final disposition of the cause. The liquidator's motion to dismiss the bill was denied.

In an amended answer to said bill, the liquidator of the bank alleged the superiority of the bank's lien to the alleged right of the administrator to reformation; that the bank's lien was acquired without notice in so far as the land levied on was concerned; that the deed, though recorded, did not cover this 18½ feet; that there had been no change in possession when the bank acquired its lien; and also by an amendment to paragraph 3, set up that the deed sought to be reformed was presumptively fraudulent, having been executed by Beeman to his mother while he was insolvent and while his debt to the bank was being reduced to judgment; that it was made voluntarily and without any consideration.

The amended answer also renewed the motion to dismiss the bill.

To this amendment to paragraph 3 of the answer, the plaintiff administrator filed a special replication setting up that this question was *res judicata;* that in the former suit hereinabove referred to, brought by the predecessor of the present liquidator against Beeman and his mother, the same allegations were made and the court was asked to declare that the said deed was without valuable consideration, voluntary, fraudulent and void upon the same grounds, but that in that case a final decree upon the merits was rendered, denying the relief prayed for and dismissing the bill.

The defendant, the bank's liquidator, moved to strike the

replication upon the grounds (1) that the deed involved in the former chancery case above referred to, and which deed is herein sought to be reformed, describes lands which are not covered or described in the bank's writ of execution, sale under which is by plaintiff sought to be enjoined; (2) that the deed was in fact fraudulent for the reasons above stated, and (3) that the records of the former case, despite the decree rendered, show that said deed was voluntary and fraudulent, and the record of the testimony of Beeman in said suit was attached in support of this charge.

This motion to strike the plaintiff's replication was denied by the chancellor, and it is from this order that the present appeal was taken.

The second and third grounds of the motion to strike the replication may for the present be disregarded, as they but reiterate, in substance, the allegations already made in the answer, and also seek to question the matter adjudicated in the former suit between the same parties, or their predecessors; but the motion should have been granted upon the *first* ground. The first ground of the motion had merit. It sought to show that the approximately 18½ feet involved in this suit was not embraced in the former suit, and hence there was no "identity in the thing sued for" in the two suits, so far as the 18½ feet is concerned. The defendant below might just as well have admitted that the former suit between the parties settled the question, which it did, that, at least *in so far as the property described in said deed was concerned,* the deed from Beeman to his mother was not fraudulent or void, because the decree in that case adjudicated that question and it stands unreversed and in full force and effect. But even if it be admitted that the deed was not fraudulent, this 18½-foot strip was not included in that deed and not involved in that suit.

In Prall v. Prall, 58 Fla. 496, 50 So. 867, it was said:

"Where the second suit is upon the same cause of action and between the same parties as the first, the final judgment in the first suit upon the merits is conclusive in the second suit as to every question that was presented or might have been presented and determined in the first suit. When the second suit is upon a different cause of action, but between the same parties as the first, the judgment in the first suit operates as an estoppel in the second suit only as to every point and question that was actually litigated and determined in the first suit, and the first judgment is not conclusive as to other matters that might have been, but were not, litigated or decided. *The test of the identity of causes of action, for the purpose of determining the question of res adjudicata, is the identity of the facts essential to the maintenance of the actions.* It is of the essence of estoppel by judgment that it be made certain that the *precise facts* were determined by the former judgment. If there is any uncertainty to the matter formerly adjudicated, the burden of showing it with sufficient certainty by the record or extrinsically is upon the party who claims the benefit of the former judgment." (Italics supplied.)

Even when the cause of action is the same, and between the same parties there must be also "identity in the thing sued for." Gray v. Gray, 91 Fla. 103, 107 So. 261.

So as to this 18½ feet, there is no *res judicata.*

The cause of action is not the same. The former suit was brought by the bank's liquidator to have the deed declared fraudulent and void, as a conveyance of the land *therein described.* In that case the burden of proof was upon him. In the present suit, brought by the administrator of the grantee in that deed, he seeks to enjoin the sale under execution of a strip of land not described in the

said deed involved in the former suit, which strip has since been levied upon by the bank, and to which plaintiff administrator admittedly has no record title, but to which he seeks to acquire title, after levy, by means of the reformation of the deed made several years before so as to relate back to the time the deed was executed in 1931 and embrace within the deed the lands since levied upon under a valid judgment against the grantor in the deed and thus defeat the effect of the judgment and levy, the validity of which is not questioned. In the instant suit, the burden of proof is upon the personal representative of the grantee to allege and show that in equity and good conscience, in view of all the facts and circumstances, he is entitled to the relief he seeks. As a general rule, the burden would be upon the plaintiff in such cases to allege and prove that there was a valuable or meritorious consideration for the deed. Nor, as a general rule, will equity reform a contract or conveyance which is merely voluntary and based on no consideration, except with the consent of all parties. And where reformation is the only relief sought, a previous demand for the correction of the instrument is essential. 23 R. C. L. 345-7. Suffice it to say, however, that in this case the cause of action is not the same as in the former suit, and hence the rule laid down in Prall v. Prall, *supra,* applies, and the parties are estopped by the decree in the former suit only as to the points and questions actually litigated and determined in that suit, taking into consideration the question of the identity of the *facts* essential to the maintenance and adjudication of both actions, including the identity *vel non* of the land involved.

For the purposes of the decision of this case, it might be conceded that the former suit settled the question that the deed was not void for fraud as to all the land described in

that deed, but the deed in question did not describe or include the 18.71 foot strip on which the bank's execution was levied and which was levied at a time when the title stood on the record free and clear in Lester Beeman. Thus there was no identity in the property involved in the two suits in so far as this strip of land was concerned. Furthermore, the bank by its judgment and by this levy, acquired a valid lien on the property—a vested right which cannot lightly be taken away. This deed from Beeman to his mother may be equitably reformed as between the parties thereto or their personal representatives, but as against the defendant bank and its liquidator, equity will not lend its hand to deprive them of their vested right. Neither the bank nor its liquidator had anything to do with the making of the deed, nor with any mistake or oversight in the description therein contained, nor is it charged that they had any notice thereof except such notice as the record of the deed disclosed. This record showed that after the deed was made, Lester Beeman was still the owner of this 18.71 foot strip, to which the bank's judgment lien immediately attached, and later execution was levied upon it.

We have long had a statute, Section 5698 C. G. L., which provides that no conveyance, transfer or mortgage of real property, or any interest therein, shall be good and effectual in law or equity against creditors and subsequent purchasers for a valuable consideration and without notice, unless the same be recorded according to law. If the trial court should reform this deed as against the bank, so as to relate back and destroy the bank's lien acquired shortly after the deed was made on this strip of property which was not embraced in the deed as originally executed, it would defeat the policy of this statute and would accomplish something which the parties themselves could not do. For obviously if Lester

Beeman, after the bank had acquired its lien, had made and placed on record a corrected deed to his mother, it would not have been effectual in law or equity against the bank, even though he had had it duly recorded, because such new deed and recording would have taken place subsequent to the judgment and levy of execution and could not have displaced the lien the bank thus acquired. In 53 C. J. at page 1055-56 it is said:

"Except as to *bona fide* purchasers without notice and those standing in similar relations, upon the reformation of an instrument the general rule is that it relates back to and takes effect from the time of its original execution, especially as between the parties themselves, and as to creditors at large and purchasers with notice, although under some circumstances the equitable rights of the parties or of third persons may qualify or prevent the strict application of this rule, *as in the case of the lien of a judgment creditor which has attached after the execution of the mortgage but before its reformation.*" (Italics ours.)

In Wheeler v. Kirtland, 23 N. J. Eq. 13, it was held that where a mortgage was reformed by substituting the word "heirs" for "successors" so as to make the mortgage convey the fee, such reformation would not affect a subsequent judgment, the record of the mortgage being the only notice which the judgment creditor had at the time of the entry of the judgment, and that notice showed a mortgage which conveyed a life estate only.

In Van Thorniley v. Peters, 26 Ohio St., 471, it was held that a defective mortgage when reformed will not affect the lien of a judgment rendered between the date of the execution and the reformation of the mortgage.

In Wixon v. Wixon, 76 Colo. 392, 232 Pac. 665, it was held that while a mortgage defectively describing the land

may be reformed as to the mortgagor, such reformation of the mortgage so as to make it correctly describe the land intended to be mortgaged cannot affect the priority of a judgment lien acquired subsequent to the execution of the mortgage, but prior to the correction; that the lien of a judgment creditor stands upon the precise footing of that of a purchaser in good faith, as against a mortgage with an incorrect description.

To like effect see Davis v. Lutkiewiez, 72 Iowa 254, 23 N. W. 670; Trope v. Helmar, 275 Ill. 86, 113 N. E. 954, and Wedman v. Carpenter, 65 Colo. 63, 173 Pac. 57.

While there are cases holding to the contrary, we think the cases above cited are more in harmony with the trend of our own decisions and the policy of our statute.

The order appealed from is accordingly reversed, and the cause remanded for further proceedings not inconsistent with the foregoing opinion.

Reversed and remanded.

ELLIS, C. J., and WHITFIELD, TERRELL, BUFORD and DAVIS, J. J., concur.

DAVIS, J. (concurring).—Appellee invokes the rule that where a point has been actually and directly put in issue and there judicially passed upon, that such point cannot again be drawn in question in any future action between the same parties, or their privies, *whether the causes of action in the two suits be identical or different* (McGregor v. Provident Trust Co., 119 Fla. 718, 162 Sou., Page 323) and contends that this is a controversy that should be controlled by the above rule because of a former suit between the bank liquidator and the grantor that had resulted in an adjudication against the fraudulent nature of the deed sought to be reformed in this case. But the estoppel by judgment created by the former litigation applied peculiarly

to the land therein described rather than the deed, so this is not a case within the rule contended for, namely, estoppel by judgment which is a corollary to the rule of *res adjudicata*.

## ON REHEARING.

BROWN, J.—The first phase of our opinion in this case dealt only with the question of *res judicata;* that is, whether the previous suit between the parties is conclusive in the present suit as to the strip of land 18.71 feet wide and about 78 feet long, which land was not embraced in nor affected by said former suit. This question was decided independently of the validity *vel non* of the bank's judgment lien, vested or otherwise, upon said land. That portion of the opinion terminated with the short paragraph reading as follows:

"So as to this 18½ feet, there is no *res judicata.*"

We held that the cause of action is not the same, that the suit pleaded as an estoppel in appellee's second amended replication is not the same cause of action as the instant case; nor does it cover the same lands embraced in the former suit; that even when the cause of action is the same and between the same parties there must be also, to constitute *res judicata, identity in the thing sued for.* Citing Prall v. Prall, 58 Fla. 867, and Gray v. Gray, 91 Fla. 103, 107 So. 261. And, as stated by Mr. Justice DAVIS in his concurring opinion, the alleged "estoppel by judgment" created by the former litigation applied peculiarly to the land therein described rather than the deed.

On rehearing, our attention is called to the fact that in McGregor as Receiver v. Provident Trust Co., 119 Fla. 718, 162 So. 323, this Court held that a point which was actually and directly in issue in a former suit and was there judicially passed on and determined by a court of compe-

tent jurisdiction cannot again be questioned in a future action between the same parties or their privies whether *the cause of action* in the second suit be identical or different; and that a judgment rendered by a court of competent jurisdiction, on the merits, is a bar to any future suit between the same parties or their privies upon the same cause of action, so long as it remains unreversed. Black on Judgment, 2nd Ed., Vol. 2, 504. But here there is no identity, either in the cause of action or the thing sued for; hence no estoppel. And in the case referred to this Court also said:

"This Court has expressly stated that, in order to make a matter *res adjudicata,* there must be a concurrence of identity in the thing sued for, identity of cause of action, identity of persons and parties to the action, and identity of quality in persons for or against whom claim is made. Lake Region Hotel Co. v. Gollick, 110 Fla. 324, 149 Sou. Rep. 204; Gray v. Gray, 91 Fla. 103, 107 Sou. Rep. 26; Brundage v. O'Berry, 101 Fla. 320, 134 Sou. Rep. 520. This is in line with the second of the two rules above stated by Black; the first is commonly denoted as estoppel by matter of record, and the second as *res adjudicata.*"

After disposing of the question of *res judicata* our former opinion proceeded to discuss to some extent the equities of the present case, and in so doing we reached the conclusion that the bank acquired a vested lien against the 18½-foot strip of land by virtue of its judgment; and that in this present case, brought to reform the deed made by Lester A. Beeman to his mother seventeen days before the judgment was rendered against Lester Beeman, so as to embrace within said deed the 18½-foot strip, the burden was upon the complainant in the court below to allege and prove his right to thus secure reformation of said deed,

which, if granted, would relate back to the time the deed was secured in 1931 and embrace within the deed the lands which had thereafter been levied upon under appellant's judgment against Lester Beeman and thus defeat the effect of the judgment and levy.

The appellee contends, on rehearing, that appellant acquired no *vested lien* or right in said strip of land by reason of its judgment and levy, and that this Court has overlooked the legal principle, heretofore recognized by this Court, that the lien of a judgment under the statutes of Florida is effective only as to the beneficial interest of the judgment debtor in the real estate in question; citing Hunter v. State Bank, 65 Fla. 202, 61 So. 497; Miller v. Berry, 78 Fla. 98, 82 So. 764; First National Bank v. Savares, 101 Fla. 480, 134 So. 501. We fully recognize the law as laid down in the cases cited, but in the case of Hunter v. State Bank, *supra,* this Court held as follows:

"The lien of a judgment under the statute of Florida is effective only as to the beneficial interest of the judgment debtor in real estate. But if the record shows a beneficial interest in the judgment debtor and there are no circumstances to rebut such showing, or to put interested parties upon enquiry, when in fact the judgment debtor has no beneficial interest, or only a partial or qualified interest, those who have the beneficial interest not shown of record may be estopped from asserting it against a *bona fide* judgment creditor or subsequent purchaser of the judgment debtor, when the judgment creditor or purchaser at a judgment sale under the judgment reasonably may have acquired substantial rights on the faith of, or by reason of the record showing an interest in the judgment debtor, when in fact such interest belongs to another."

"The registry statute does not operate to convey title in,

or to create a lien upon property; but records made under such statute may operate as an estoppel, where persons without actual knowledge and without circumstances to put them upon enquiry, may have reasonably taken steps relying upon the record, and those who by their conduct or neglect in permitting the record to mislead others must bear any consequent loss, rather than one who in good faith may have acted with reference to the record as being in accord with the actual facts."

The land here in question stood in the name of the judgment debtor, as the holder of the legal title at the time the judgment was rendered and at the time the execution was levied. When the judgment lien attached to this land, the judgment creditor acquired a vested lien, capable of enforcement, even though it may be subject to being divested if it can be shown that the complainant in the court below is entitled to have the deed to Mary O. Beeman, which was made and recorded seventeen days before the judgment, so reformed as to include within that deed the land in question. While the lien of a judgment does not create an estate or right of property in the lands to which the judgment lien attaches, it does create a lien upon said land to the exclusion of adverse interests subsequent to the judgment, 34 C. J. 569. The court that rendered the judgment may enforce the lien by writ of execution. However, in proper cases, the powers of a court of equity may be invoked to protect the lien or to enforce it. 34 C. J. 739; Habeson Lumber Co. v. Geneva Mill Co., 116 Fla. 342, 156 So. 710. We have long held in this State that a mortgage does not create an estate in the mortgagee, but merely a lien upon the property; but we have also held that such lien creates a right which may be protected from unlawful invasion or impairment. And in Seaboard All Florida Ry.

Co. v. Levitt, 105 Fla. 600, 141 So. 886, it was said that "such lien is itself a species of intangible property, of which the holder cannot be deprived without due process, and under which the actual property may be subjected to the lien and sold to satisfy the debt secured thereby. (Citing authorities.) In that case, which was a condemnation suit, we said that it was "a question of damages for impairment of the lien, which affords grounds for a law action on the case for damages, 11. C. J. 9, or in some circumstances, as where there is no right in the lienor to immediate possession, grounds for a suit in equity," citing 37 C. J. 340, 342. Thus most certainly rights of some sort do vest in the judgment creditor when his judgment lien attaches to real estate the legal title to which is in judgment debtor; for *prima facie* the legal title is evidence of the beneficial interest also until the contrary is duly established.

It does not appear that at the time the judgment lien attached the bank had any knowledge or notice of Mrs. Beeman's alleged right to demand a reformation of the deed so as to embrace the land in question. Nor does it appear that there had been any change in possession of the land here in question up to the time the judgment lien attached, nor thereafter so far as that is concerned. See McAdow v. Wachob, 45 Fla. 482, 33 So. 702. While this may not estop the Administrator of Mrs. Beeman from seeking reformation of the deed (Miller v. Berry, *supra*) it would go to support the position which the court has taken that the burden is upon the administrator to both allege and prove his right in equity to such decree of reformation.

Thus, the question as to whether or not Lester A. Beeman, the judgment debtor, had a beneficial interest in the 18½-foot strip at the time the judgment lien attached depends upon whether or not the administrator of Mrs. Mary

O. Beeman, the grantee, has the right in equity to reform the description of the deed so as to include the land involved in this suit.

Appellee contends that in denying the bank's motion to dismiss and by granting the temporary restraining order staying the sale of this land under the execution, the lower court in effect ruled that plaintiff had the right to reform the deed as against the bank, and that this question is not before this Court. But the court below could very properly have denied the motion to dismiss the bill for another reason. Lester A. Beeman was really the principal defendant, having been the grantor in the deed sought to be reformed, and being the record fee owner of the land now in controversy. In ruling upon the motion below, the court may have considered that the plaintiff had equity against defendant Beeman which would withstand a motion to dismiss. It is doubtless for this reason that the court refused to dismiss the whole bill, as was sought by the motion. Whether or not reformation may be had between the parties to the deed is a question separate and distinct from the question whether or not the defendant bank should be affected by such reformation. Also, the court might well have restrained the sale under execution in order to preserve the owner's right to protect the property until the true ownership was ultimately determined. So the ruling of the court below is as consistent with the theory that the bank does have a valid lien as it is with the theory that it does not. Reformation could have been allowed as between the parties to the deed without affecting the bank's equities. Furthermore, this Court might have considered such questions even though they were not directly presented on the appeal. Thus, we have held that where a bill in equity wholly fails to state a cause of action, or where it wholly fails to pre-

sent a case authorizing the relief prayed for, it is the duty of the appellate court to note the defect, although it has been ignored in the pleadings, assignments of error and argument. City of Jacksonville v. Massey Business College, 47 Fla. 339, 36 So. 432; Florida Packing & Ice Co. v. Carney, 49 Fla. 293, 38 So. 602.

In dealing with the subject of reformation of instruments it is said in 23 R. C. L. 344-345 that:

"It is sometimes stated as a general rule that equity will not undertake to reform a conveyance or contract which is merely voluntary and based on no consideration. Or, as some authorities state the rule, equity will not reform a voluntary conveyance without the consent of all parties. But the actual rule, stated with its proper limitations, is that a court of equity will not reform the instrument at the suit of the grantee or those holding under him, as against the grantor or his successors. There being no consideration moving the grantor, the volunteer has no claim on him. If there is a mistake or a defect, it is a mere failure in a bounty which, as the grantor was not bound to make, he is not bound to perfect. Equity will not therefore lend the volunteer its aid." * * *

"Any consideration which will support a deed or mortgage is sufficient for the purpose of reformation. A promise by a married woman to reconvey certain property to her husband on his request in consideration of his conveyance of such property to her through a third person, and reserving to the husband a life use therein, is based on a valuable and adequate consideration. A deed given in consideration of 'the sum of one dollar and natural love and affection' has been held to be reformable; but in another jurisdiction the grantees of a deed with such a consideration have been held mere volunteers."

And on page 346 of the same volume it is said that a "meritorious" consideration is sufficient to enlist the aid of a court of equity in certain cases, such as a voluntary deed making a donation to a charitable use and a deed for the support of a wife or child, although the rule is not universal. It is further said:

"A meritorious consideration is held to exist when the grantor stands *in loco parentis* in respect to the grantees. The equity which rests on the support of a meritorious consideration extends only to cases involving the duties, either of charity, of paying creditors, or of maintaining a wife and children. One who supports his claim for reformation by showing not a valuable but only a meritorious consideration for the conveyance in question cannot get the assistance of the court to the prejudice of other persons the foundation of whose claims are equally or more meritorious." (23 R. C. L. 346.)

Under the heading, PREREQUISITES TO RELIEF, the text of 23 R. C. L., pages 346-347, reads as follows:

"He who asks for the remedy must make an equitable showing. If his case is weak in its equities, reformation will be denied. If his equity is met by an equity of equal dignity, the parties will be left to exercise their strict legal rights. If his equity is not met by opposing equities, the court will have less hesitation in granting the relief asked. If a mortgage is shown to be tainted with usury the mortgagee cannot maintain a bill to reform it unless he offers to abate the whole interest. The court will not interpose, in the absence of fraud, unless the party against whom the equity is asserted, as well as the party who asserts it, can be restored substantially to the same situation as before."

"If the only relief sought is the reformation of the instrument in question, a previous demand for correction is

essential; but if in addition to the reformation it is asked that the instrument as reformed be enforced, no prior demand is necessary."

We may have overemphasized the effect of our recording statute, Section 5698, C. G. L., in our former opinion, but nevertheless that statute does have a very substantial bearing upon the question of the validity of the bank's lien.

Thus in Rogers v. Munnerlyn, 36 Fla. 591, 18 So. 669, this Court quoting with approval the holding in Doyle v. Wade, 23 Fla. 90, 1 So. 516, wherein it was said that a " 'judgment is a lien on real estate which has been conveyed by deed by the defendant in execution prior to the rendition of the judgment, but which was not recorded, and of which the judgment creditor did not have actual notice at the time of entering such judgment. If the judgment creditor had no notice of the deed, either actual or constructive, his lien was complete, and a purchaser at a sale thereunder would take such title as the records showed to be in the defendant in the judgment without regard to whether the purchaser had notice of it or not.' See also Lusk v. Reel, decided at this term. Where the creditor obtains a judgment and secures a lien on real estate before a prior deed from the judgment debtor is recorded, it is settled that the judgment creditor has the superior right to satisfaction out of the property; but what about a creditor who has not secured any judgment lien? Does 'creditor' in the statute mean a creditor at large, or one who has secured a lien by judgment or attachment? In Massey v. Hubbard, *supra,* this Court followed the decisions in Alabama and New Jersey, where statutes similar to ours existed, and according to the decisions in those States, the creditors referred to in the statutes did not mean creditors at large, but such as had obtained liens on the recovery of judgments."

See also Carolina Portland Cement Co. v. Roper, 68 Fla. 299, 67 So. 115.

For the reasons above pointed out, our former opinion, except as hereinabove slightly modified and explained with reference to the nature of the "vested rights" acquired by the attaching of appellant's judgment lien to the land here involved, is adhered to, and our original judgment reversing and remanding the cause for further proceedings not inconsistent with this Court's opinion, is confirmed and allowed to stand.

Prior judgment adhered to and confirmed on rehearing.

ELLIS, C. J., and WHITFIELD, TERRELL, BUFORD and CHAPMAN, J. J., concur.