### In re SAFE–T–BRAKE OF FLORIDA, INC., Debtor.

**Bankruptcy No. 90–25733–BKC–AJC.**

United States Bankruptcy Court,
S.D. Florida.

April 5, 1991.

Martin L. Sandler, Robert J. Paterno and Gary Rudolf, Taylor, Brion, Buker & Greene, Miami, Fla., for William Archer.

Louis Mrachek, Gunster, Yoakley, Stewart, West Palm Beach, Fla., for Sun Bank.

Reggie D. Sanger, Ft. Lauderdale, Fla., for trustee.

Patrick Scott, Goldberg & Young, P.A., Ft. Lauderdale, Fla., for debtor.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

A. JAY CRISTOL, Bankruptcy Judge.

THIS CAUSE came on to be heard before this Court on Monday, January 7, 1991 and on February 14, 1991 on the Motion of William Archer ("Archer") for payment of administrative rent ("the Motion"). The Court has reviewed the Motion, considered exhibits admitted in evidence and heard testimony of witnesses for Archer and Sun Bank, N.A., ("Sun Bank" or "the bank"). The Court being fully advised in the premises makes the following findings of fact and conclusions of law.

Archer is the owner of certain premises previously occupied by the Debtor in this case, Safe–T–Brake of Florida, Inc., ("Safe–T–Brake" or "Debtor"). Sun Bank is a banking institution holding a security interest and lien against the accounts receivable, inventory, and equipment of Safe–T–Brake.

On August 20, 1990, Safe–T–Brake filed a voluntary petition for relief under Chapter 11, Title 11, United States Code. The Chapter 11 case was short-lived and an Order was entered converting the Chapter 11 case to a proceeding under Chapter 7. A Trustee was appointed. On December 8, 1990 this Court entered an Order on the Trustee's Motion to Surcharge Administrative Rent and Archer's Motion for Payment of Administrative Rent. Archer's Motion not only requested a determination of the amount of administrative rent due, but also

payment and surcharge of the rent against Sun Bank. The December 8, 1990 Order provided, inter alia, that the Trustee was to retain $33,835.94 an amount representing administrative rent from August 20, 1990 to October 19, 1990 from funds previously determined to be Sun Bank's cash collateral, until further Order of the Court. The Court retained jurisdiction over Sun Bank to determine if any additional surcharge was warranted against Sun Bank for administrative rent and reserved three issues for future determination:

A. The amount of administrative rent due.

B. Any claimed setoff by Sun Bank.

C. Whether Archer is liable to Sun Bank for environmental clean-up.

Sun Bank held a security interest in the Debtor's accounts receivable, inventory and equipment. On October 19, 1990, Sun Bank purchased from the Trustee the Debtor's inventory and equipment assets ("the property"). Sun Bank's lien and security interest then merged and it immediately took possession of the property and premises from the Trustee. Sun Bank did not assume the Debtor's lease with Archer.

Archer has received no rent from any party since the filing of the bankruptcy petition. Sun Bank has agreed that this Court may determine the amount of the rent, if any, which may be due since the filing of the bankruptcy petition, particularly rent accrued from October 19, 1990, until the surrender of the premises to Archer on February 22, 1991. Sun Bank further agreed that it may be surcharged for payment of such rent while it occupied the premises. The Court assumes that the relevant rental period insofar as it relates to Sun Bank will be for the period October 19, 1990 through February 22, 1991.

■ Before considering the issues raised regarding the claims between Archer and Sun Bank, it is important to consider the obligation of the Trustee for payment of administrative rent. Pursuant to 11 U.S.C. § 365(d) the Trustee is required to perform all the Debtor's obligations under a nonresidential real property lease until the

Trustee either assumes or rejects the Lease. The Trustee did not assume the lease and it was deemed rejected 60 days after the Order for relief was entered. Until that time the Trustee was bound by the stipulated rental amount to be paid under the lease terms. *In re Fisher and Fisher, Inc.,* 51 B.R. 680 (U.S.B.C., S.D., Ohio, 1985.) Therefore, Archer is entitled to payment from the Trustee of administrative rent accrued during the 60–day period between August 20, 1990 and October 1990 in the amount of $33,835.94.

The remaining issues present novel questions not heretofore addressed by this Court. They reflect an age old problem involving two seemingly innocent parties. As is not unusual, the guilty party has left the scene, disappearing into the abyss of Chapter 7, incapable of contributing to redress the wrongs caused by its operations.

It is undisputed that Archer is the owner and landlord of the premises, the Debtor was the tenant pursuant to the terms of a non-residential real property lease, and that the Trustee was in possession of the premises until October 19, 1990 when she sold the assets to Sun Bank. Sun Bank has been in control and possession of the premises since that date until vacating on February 22, 1991.

Safe–T–Brake was formed in 1983 to manufacture replacement brakes. The manufacturing process included the use of asbestos parts. Archer was Chairman of the corporation and a principal shareholder, although not a majority shareholder, of the company.

In December 1986, the shareholders sold their stock in the company to the current owners who leased the premises from Archer and continued to operate the business until the bankruptcy petition was filed. The Lease was an arms length transaction at market rental.

Potential asbestos contamination resulting from the manufacturing process was known to Archer. While he was Chairman, special equipment was installed by the company for cleaning purposes. This equipment was used to clean the manufacturing equipment of asbestos fibers and to maintain the environment in compliance with environmental protection laws. While Archer ran Safe–T–Brake, the uncontroverted testimony indicates that the business had few, if any, environmental problems. The specialty equipment was in place and maintained by a full-time engineer to insure the proper evacuation of asbestos fibers in compliance with State and Federal environmental standards.

Archer testified that during his ownership and management no environmental citations were issued to his company. This was corroborated by the testimony of Henry Powell. Powell further testified that the new owners of Safe–T–Brake replaced the maintenance engineer with a less-skilled person, and in his view, maintenance of the cleaning equipment began to deteriorate.

There is some evidence that thereafter the Debtor was cited for various environmental violations. Then, in March of 1990, Sun Bank entered into a loan transaction with the Debtor to finance its accounts receivable and inventory. As security for the multimillion dollar advance, Sun Bank took a security interest in all of the Debtor's accounts receivable, inventory and equipment. All of the equipment used in the manufacturing process and a substantial amount of the raw material and finished inventory were located at the subject premises. Although Sun Bank conducted its due diligence investigation and inspected the premises, equipment and inventory before making the loan, no environmental audit was conducted prior to closing the loan.

Although he asserted that the Bank was unaware of any asbestos fiber contamination problems effecting the premises, inventory or equipment, Jeffrey Dickson, a bank officer, (admittedly not the officer making the loan), testified that the Bank knew of the nature of the Debtor's business and that the equipment and inventory were used in manufacturing a product which included asbestos parts. At the very least, the Bank was equally aware as Archer that asbestos materials were used by

Safe–T–Brake in the manufacturing process.

At the Trustee's sale on October 19, 1990, when the Bank acquired the property, Archer suggested to the Trustee that there might be an asbestos contamination problem. The Trustee advised the Bank of this possibility. Only then, almost 6 months after making the loan, did the Bank undertake an asbestos fiber environmental assessment. At that point, the ostrich having lifted its head from the sand, the Bank discovered the problem. The equipment and inventory located on the premises were covered with an unacceptable level of asbestos fiber contamination, necessitating an expensive clean-up. The contamination had spread throughout the factory and was found on the walls, ceiling, floors, fixtures and most importantly, the equipment and inventory now owned by the Bank and against which it previously held a lien.

Discussion then ensued between Archer and the Bank's representatives regarding payment of rent. Those discussions reached an impasse in late November when Sun Bank took the position no rent was due because of the contamination. Sun Bank considered that the asbestos contamination had rendered the building untenantable and thus the fair rental value was zero. The Bank still asserts that it should not be obligated to pay any rent.

■ Sun Bank took possession of the premises from the Trustee without benefit of any agreement with the landlord and has no legal right to occupy the premises. Injury to or use of the land of another by one having no right or authority is to trespass. *Brown v. Solary*, 37 Fla. 102, 19 So. 161 (1896); *Guin v. City of Riviera Beach*, 388 So.2d 604 (Fla. 4th D.C.A. 1980). In essence, the Bank is a trespasser, or, at best a tenant at sufferance. *Executive Square Office Building v. O'Connor*, 19 B.R. 143, 147 (Bkrtcy.N.D. FL 1981); *Leaders International Jewelry v. Board*, 183 So.2d 242, 244 (Fla. 3d D.C.A. 1966); F.S. 83.04.

■ As a point of departure, in establishing the fair rental value of the premises, the lease establishes a prima facie rental value. *In the Matter of Florida Airlines, Inc.*, 17 B.R. 683 (Bkrtcy.M.D. FL 1982); 2 Collier on Bankruptcy ¶ 365.03(2) (15th Ed. 1981). Indeed, testimony of Mr. Cuthbertson and Mr. Burger, rental experts for Archer and Sun Bank respectively, suggest that rental costs for premises knowingly to be used for environmentally sensitive operations command a premium. The Bank has submitted no credible evidence that rent for its use of the premises should be less than that specified in the lease. To support its position Sun Bank has argued that Archer is responsible for the contamination, or at least knew of it and had a duty to inform the Bank of its existence.

■ The Court has considered the fact that both parties are innocent of wrongdoing. Neither caused or created the contamination. They are victims of the Debtor's apparent failure to properly maintain the equipment designed and installed to prevent the contamination which exists here.

Archer had no control over the premises or the Debtor's equipment after 1986. Although he may have assumed some risk with regard to asbestos fiber contamination to the building itself, he certainly did not assume any risk with regard to contamination of the equipment and inventory. Sun Bank was not in control of the equipment but was a secured lender. Contamination of its collateral has affected Sun Bank and required the Bank to cleanse it in order to make it environmentally safe for sale to a third party. When Sun Bank closed its loan with the Debtor, it knew the borrower's business was environmentally sensitive. Sun Bank was in a better position than Archer to protect its collateral from such contamination.

Upon learning of the asbestos contamination to its collateral, the Bank was confronted with a difficult choice. Testimony of experts offered by Sun Bank and Archer was not in disagreement. The equipment could be decontaminated on the premises or by removal to another location. Although differing in the cost estimates for decontamination by removal to another site, the testimony is undisputed that it was significantly more expensive for Sun Bank to

decontaminate by offsite cleaning, which would have permitted surrender of the premises to the landlord at an earlier date. Accomplishing this by retaining possession of the premises was a significant financial advantage to Sun Bank.

Both experts agreed that the asbestos contamination was not the result of any asbestos content in the roof, walls, floors, partitions, rafters and fixtures. The building structure contained no asbestos and in no way contributed to the cause of the asbestos fiber contamination. The contamination resulted solely through the manufacturing process due to a malfunction of the cleaning equipment.

There was a divergence of opinion as to when the contamination may have occurred. Mr. Shepherd, Sun Bank's asbestos expert had no opinion on that issue. In contrast, Ms. Kryczkowski, Archer's expert, testified that the asbestos contamination occurred after 1987, that is, after Archer sold the business and resigned as Chairman. The evidence is uncontroverted that before 1987 there were no asbestos problems; after that date, problems did occur.

Sun Bank used the premises for its benefit after taking possession in October 1990. If the Bank had been required to move before completing the decontamination process, it would have been substantially more expensive for the Bank. Relocation would prove more expensive not only for the actual decontamination process, but would also result in the added cost of rent for the alternative premises. Mr. Cuthbertson and Ms. Kryczkowski both testified credibly that such premises, because of hazardous use, command premium rentals.

■ The Bankruptcy Court is a court of equity. See 11 U.S.C.A. § 105(a); *In re Ranch House of Orange–Brevard, Inc.*, 773 F.2d 1166 (11th Cir.1985) on remand 78 B.R. 323 (Bkrtcy.M.D.Fla.1987). It is a longstanding maxim of equity that "where one of two innocent parties must suffer a loss, the one who made possible the loss must bear it," *In re Continental Casualty Co. v. Associated Plastics, Inc.*, 347 So.2d 822 (Fla. 3rd D.C.A. 1977). The equities of this case do not favor the Bank and it should not be favored with relief, *In re Smith v. Pattishall*, 127 Fla. 474, 129 Fla. 498, 176 So. 568 (1937).

The Bank made a substantial loan in March 1990 to a company in an environmentally sensitive business without an environmental inspection, and made no effort to determine the existence of any asbestos fiber contamination. No effort was made to determine environmental compliance which might adversely effect its collateral. The Bank seeks to place blame on Archer, who neither had interest in the collateral, nor control over the Debtor's operations. If the contamination was shown to have resulted from asbestos fibers emanating from the building structure, perhaps there could be culpability imposed upon the landlord for contamination of the Bank's equipment. However, the evidence is uncontroverted that any contamination resulted from the failure to properly maintain and clean the equipment to prevent a build-up of asbestos fibers on the equipment and in the air; a failure to comply with environmental standards. Sun Bank's collateral was contaminated through its borrowers actions.

Sun Bank must bear the risk attendant to contamination of its equipment. Use of Archer's premises to accomplish decontamination in order to dispose of its collateral was a significant benefit to Sun Bank. Archer should not be burdened with the Bank's occupancy without compensation. A rental value of zero patently lacks credibility. No credible evidence to the contrary having been submitted, it is the Court's view that the rental value stipulated in the lease is a fair rental value for occupancy by the Bank. The landlord is entitled to recover rental from October 19, 1990 through February 22, 1991 from Sun Bank in the sum of $60,000.

## FINAL JUDGMENT

THIS CAUSE having come on to be heard before the undersigned Judge of this Court on the Motion of William Archer, landlord of certain premises previously occupied by the Debtor for payment of ad-

ministrative rent and for surcharge against Sun Bank, N.A. for use and occupancy of the premises, the Court having this day entered Findings of Fact and Conclusions and Law on said Motion in accordance with the findings and conclusions, it is thereupon

ORDERED AND ADJUDGED:

1. William Archer is due the sum of $33,835.94 as administrative rent from the date of bankruptcy to October 19, 1990 from the Trustee in bankruptcy.

2. William Archer is entitled to rent, surcharged against Sun Bank, N.A. in the sum of $60,000.00 for the period October 19, 1990 through February 22, 1991.

3. Costs in favor of the prevailing party shall be awarded by the Court upon Motion and hearing.