DISTRICT COURT OF APPEAL OF FLORIDA
SECOND DISTRICT

_____

WEST VILLAGERS FOR RESPONSIBLE GOVERNMENT, INC.,
and JOHN MEISEL,

Petitioners,

v.

CITY OF NORTH PORT, FLORIDA,

Respondent.

No. 2D2023-2425

_____

November 19, 2025

Petition for Writ of Certiorari to the Circuit Court for Sarasota County; sitting in its appellate capacity.

Luke Lirot of Luke Charles Lirot, P.A., Clearwater, for Petitioners.

Elizabeth W. Neiberger and Alan S. Zimmet of Bryant Miller Olive P.A., Tampa, for Respondent.

NORTHCUTT, Judge.

The City of North Port rejected a petition to contract the City's boundaries, and the circuit court upheld the City's decision. The parties who filed the contraction petition, West Villagers for Responsible Government, Inc., and John Meisel (collectively West Villagers), here seek a second-tier writ of certiorari to quash the circuit court's ruling. But when the North Port City Commission elected to leave the City's

boundaries unchanged, it was performing a legislative function. Therefore, the circuit court had no authority to review its decision.

I.    Procedural History

This is the second time we have considered this dispute. West Villagers filed their petition to contract the City's boundaries in 2020, pursuant to a provision in the Municipal Annexation or Contraction Act. §§ 171.011, 171.051(2), Fla. Stat. (2020). The statute provides that a contraction may be suggested by a petition of fifteen percent of the voters in the area proposed to be excluded from the municipal boundaries, whereupon the municipality "shall immediately undertake a study of the feasibility of such proposal and shall, within 6 months, either initiate proceedings under subsection (1) [to enact a contraction ordinance] or reject the petition, specifically stating the facts upon which the rejection is based." § 171.051(2).[1]

---

[1] In 2023 the legislature made revisions to chapter 171. Ch. 2023-305, Laws of Fla. Included were some textual amendments to the contraction statute, section 171.051. Subsection (2) was amended to remove the requirement that a municipality provide findings when rejecting a contraction petition and to specify that such a rejection is a legislative decision. *Id.* at § 5. New subsection (11) was added. As described in the Senate Staff Analysis, this new provision

> revises the contraction procedures in situations where more than 70 percent of the acres proposed to be contracted are owned by private entities that are not registered electors. The bill requires in these instances that the owners of *more than 50 percent* of the acreage consent to such contraction. This change, which mirrors requirements in current law for municipal annexation, is intended to be prospective in nature and applies only to petitions filed on or after July 1, 2023.

Staff Analysis, S.B. 718, 4/25/2023. Although the staff analysis suggested that only the addition of subsection (11) was meant to be prospective, the final version of the bill stated that all the amendments to section 171.051 were prospective, to be applied only to contraction

The City Commission held evidentiary hearings on West Villagers' petition under a quasi-judicial decision-making process contained in North Port's city code. It then denied the petition in 2021. West Villagers sought review of the denial by filing a certiorari petition in the circuit court. That court granted the petition and quashed the City's decision. The City filed for second-tier certiorari review, which this court denied while opining that the lower court had applied the correct law when granting certiorari relief. *City of North Port v. W. Villagers for Responsible Gov't, Inc.*, 348 So. 3d 680 (Fla. 2d DCA 2022). The matter returned to the City Commission, which conducted further proceedings. In 2022 the City again rejected the contraction proposal. Once more, West Villagers petitioned the circuit court for certiorari review. This time, the court denied their petition, whereupon West Villagers filed the instant second-tier certiorari proceeding.

Throughout the two circuit court cases and the prior proceeding in this court, no one questioned the circuit court's authority to review the City's disposition of the contraction issue. West Villagers' first petition to the circuit court alleged that the court had both statutory review jurisdiction under an appeal provision in section 171.081(1), Florida Statutes (2020), and common law certiorari jurisdiction. The City maintained that section 171.081(1) did not apply, but it ventured that the court nevertheless could proceed by common law certiorari. The circuit court agreed with the latter assertion, citing *Broward County v. G.B.V. International Ltd.*, 787 So. 2d 838 (Fla. 2001), and for that reason it did not address whether the City was entitled to appeal under section 171.081(1). In the initial second-tier certiorari proceeding in this court,

petitions filed on or after July 1, 2023. Ch. 2023-305, § 6, Laws of Fla. Thus, the 2023 version of the contraction statute is inapplicable here.

neither party's filings addressed whether the circuit court had properly exercised jurisdiction in the matter.

In the second circuit court proceeding, West Villagers asserted the same two bases for jurisdiction as it had in the first case, the City made no argument on the topic, and the circuit court again wrote that it had common law certiorari jurisdiction under the *G.B.V. International Ltd.* case. In the instant second-tier proceeding, the subject was not mentioned in the parties' initial briefing. Ultimately, however, we directed the parties to submit supplemental briefs addressing the circuit court's jurisdiction to review the City's decision to deny or reject the contraction petition.[2]

II.    Analysis

Having considered the supplemental briefs, we agree with the City's position that section 171.081(1) did not authorize judicial review of the City's resolution of the contraction issue. That statute provides in relevant part that an affected party may challenge a municipality's violation of the annexation or contraction procedures prescribed in chapter 171 by filing a certiorari petition in circuit court "within 30 days following the passage of the annexation or contraction ordinance." § 171.081(1). By its terms, then, this right of review applies only to the *passage of an ordinance* in violation of the requirements of chapter 171. As such, it did not authorize review of the City's election *not* to enact a contraction ordinance.

---

[2] This court originally issued a per curiam denial of West Villagers' petition in this case. West Villagers then moved for a written opinion, prompting this court to order the supplemental briefing on the jurisdictional issue. Upon receiving the supplemental briefs, we granted West Villagers' motion for a written opinion and withdrew the per curiam denial, with an opinion to follow.

Contrary to the assertions of the parties, we also conclude that the circuit court lacked common law certiorari jurisdiction in the matter. Florida courts have long recognized that the review authorized by section 171.081 is the "*sole and exclusive* procedure for challenging a municipal government's failure to comply with Chapter 171, Florida Statutes." *SCA Servs. of Fla., Inc. v. City of Tallahassee*, 418 So. 2d 1148, 1150 (Fla. 1st DCA 1982) (emphasis added). The court in *City of Lake Mary v. Seminole County*, 419 So. 2d 737, 739 (Fla. 5th DCA 1982), observed that in section 171.081 the legislature provided a limited right of circuit court review in annexation proceedings "where none previously existed."[3] Manifestly, the exclusiveness of that statutory review mechanism refutes the notion that, alternatively, the City's refusal to enact a contraction ordinance could be reviewed by common law certiorari. Were that the case, there would be no purpose for section 171.081. Notably, the *G.B.V.*

---

[3] *SCA Services* and *City of Lake Mary* were decided under a substantively identical earlier version of section 171.081 enacted as part of the Municipal Annexation or Contraction Act in 1974. Ch. 1974-190, § 1, Laws of Fla. At that time the statute read:

> Appeal on annexation or contraction.—
> No later than 30 days following the passage of an annexation or contraction ordinance, any party affected who believes that he will suffer material injury by reason of the failure of the municipal governing body to comply with the procedures set forth in this chapter for annexation or contraction or to meet the requirements established for annexation or contraction as they apply to his property may file a petition in the circuit court for the county in which the municipality or municipalities are located seeking review by certiorari. In any action instituted pursuant to this section, the complainant, should he prevail, shall be entitled to reasonable costs and attorney's fees.

*International Ltd.* decision, cited by the circuit court when it concluded that it had common law certiorari jurisdiction in the instant case, did not involve the adjustment of municipal boundaries.

The reason there is no right of review in these matters outside section 171.081 is that establishing and modifying municipal boundaries is exclusively a legislative power, which the legislature has shared with municipalities by enacting chapter 171. *See* art. VIII, § 2(c), Fla. Const.; *N. Ridge Gen. Hosp., Inc. v. City of Oakland Park*, 374 So. 2d 461, 464 (Fla. 1979); *Pinellas County v. City of Largo*, 964 So. 2d 847, 849 (Fla. 2d DCA 2007). The courts' common law certiorari authority does not extend to legislative acts. *G.B.V. Int'l Ltd.,* 787 So. 2d at 843; *Haines City Cmty. Dev. v. Heggs*, 658 So. 2d 523, 526 n.3 (Fla. 1995). Thus, judicial recognition of section 171.081 as the sole method for reviewing compliance with chapter 171 long predated the 2023 statutory amendment clarifying that rejecting a contraction petition is a legislative decision.[4]

---

[4] Indeed, save for some minor copy editing, the version of the contraction statute in effect when *SCA Services* and *City of Lake Mary* were decided in 1982 was identical to the 2020 version. Both iterations of section 171.051(2) required a municipality to specify the facts upon which its rejection of a contraction petition was based. Thus, it is apparent that the 2023 amendment deleting that requirement and specifying that such a rejection is a legislative decision did not transform proceedings under the statute from quasi-judicial to legislative. Rather, it simply clarified that they are legislative, as they always have been. Were it otherwise, the previous version of the statute, applicable here, would have created an unworkable paradox in which the nature of the statutory proceedings on a contraction petition could only be determined after the fact. The proceedings would have been deemed legislative if the body ultimately granted the petition, but those very same proceedings would have been quasi-judicial had they resulted in the petition's denial.

The City's election to employ a quasi-judicial procedure when considering West Villagers' contraction petition did not morph its exercise of legislative power into a quasi-judicial decision. To be sure, the supreme court has observed that "[i]t is the character of the hearing that determines whether or not board action is legislative or quasi-judicial." *Bd. of Cnty. Comm'rs of Brevard Cnty. v. Snyder*, 627 So. 2d 469, 474 (Fla. 1993) (citations omitted). But the *Snyder* court went on to explain that quasi-legislative and quasi-executive orders may "have a quasi-judicial attribute if capable of being arrived at and *provided by law* to be declared . . . only after statutory notice, hearing, and consideration of evidence to be adduced as a basis for the making thereof." *Id.* (emphasis added) (quoting *W. Flagler Amusement Co. v. State Racing Comm'n,* 165 So. 64, 65 (1935)).

In other words, whether a government agency's decision is quasi-judicial does not turn on the agency's choice of hearing format; rather the determinant is the character of the hearing that is *required by law. Id.* Notably, North Port's own city code defines quasi-judicial matters as involving actions of public officials that "are *required* to investigate facts, or ascertain the existence of facts, hold hearings, weigh evidence and draw conclusions from such facts, as a basis for their official action." Art. III, sec. 2-82(a), City of North Port City Code (emphasis added).

Thus, the question is begged: What law required the North Port City Commission to hear and weigh evidence and draw conclusions from that evidence as the basis of its decision? The answer is *none.* The contraction statute requires only that a municipality "undertake a study of the feasibility" of a proposed contraction and within six months either begin the process of enacting a contraction ordinance or reject the proposal and state the facts on which the rejection is based. §

7

171.051(2). The statute does not require those facts to be adduced at an evidentiary hearing. To the contrary, in a provision of the 2023 amendment to chapter 171 that was *not* made prospective, the legislature defined a feasibility study as "an *analysis conducted by qualified staff or consultants* of the economic, market, technical, financial, and management feasibility of the proposed annexation or contraction, as applicable." § 171.031(6), Fla. Stat. (2023) (emphasis added); ch. 2023-305, §§ 2, 6, Laws of Fla.

Finally, the parties point to a list of characteristics of quasi-judicial decisions that were gleaned from the supreme court's opinion in *Snyder*, 627 So. 2d at 474. *See Miami-Dade County v. City of Miami*, 315 So. 3d 115, 120 (Fla. 3d DCA 2020) (citing *D.R. Horton, Inc.—Jacksonville v. Peyton*, 959 So. 2d 390, 398-99 (Fla. 1st DCA 2007)). Properly analyzed and applied, they confirm that the City's rejection of the contraction petition in this case was a legislative decision, not a quasi-judicial one. As outlined in *D.R. Horton* and *City of Miami*, those characteristics are:

*(1) Quasi-judicial action results in the application of a general rule of policy, whereas legislative action formulates policy.*

There was no general rule of policy to be applied by the City when deciding whether to enact a contraction ordinance. Section 171.052 restricts contractions to areas that do not meet the statutory criteria for annexation, and it otherwise prohibits contractions that would cause areas of the municipality to be rendered noncontiguous. Outside of those limitations, however, no statute or case authority prescribes rules to determine when a contraction petition must or must not, or should or should not, be granted or denied.

*(2) A quasi-judicial decision has an impact on a limited number of persons or property owners and on identifiable parties and interests, while*

8

*a legislative action is open-ended and affects a broad class of individuals or situations.*

The impact of a contraction under section 171.051 is not confined to the residents and property owners in the contraction area. To the contrary, altering municipal boundaries affects *at least* the entire municipality and affected county. Thus, for example, the right to appeal under section 171.081 is given to *any party affected*, which is defined in section 171.031 as "any persons or firms owning property in, or residing in . . . a municipality or any governmental unit with jurisdiction over such area."[5]

The statutes themselves reflect some, but not all, of the ways that a contraction affects interests beyond those who live or own property in the contraction area. Under section 171.052(2), for instance, a contraction ordinance must provide for the apportionment of prior existing debt and property. Certainly, this would affect all taxpayers and residents in both the city and the county, as would the requirement in section 171.061(2) that in the event of a contraction the municipality must reach an agreement with the county to determine what portion of existing debt or property is to be assumed by the county, its valuation, and the manner of its transfer or financing.

And, of course, the mandated feasibility study must consider applicable economic, market, technical, financial, and management factors which are certain to affect a "broad class of individuals or

---

[5] The 2020 version of section 171.031(5) defines *parties affected* as "any persons or firms owning property in, or residing in, either a municipality proposing annexation or contraction or owning property that is proposed for annexation to a municipality or any governmental unit with jurisdiction over such area." This definition was moved to subsection (9) in the 2023 version.

9

situations" extending well beyond the "limited number of persons or property owners" and "identifiable parties and interests" within the proposed contraction area. The deletion of property from the municipal tax rolls would necessarily affect all taxpayers in the city. The expense of exercising police powers and furnishing services in the contraction area would shift from the municipality's taxpayers to the county's. Local ordinances and codes governing the area—applicable to residents, property owners, and *nonresident passers-through*—would change. *See* § 171.062(3). Other examples would include, but would not be limited to, the necessary alteration of governing representative districts in both the city and county, the adjustment or assumption of utility franchise agreements, and so forth. *See* § 171.062. Essentially, the effect of a municipal contraction on persons and interests is open-ended.

*(3) A quasi-judicial decision is contingent on facts arrived at from distinct alternatives presented at a hearing, while legislative action requires no basis in fact finding at a hearing.*

As mentioned previously, section 171.051 has never required a municipality to take evidence on the contraction issue or base its decision on such evidence. And aside from statutory restrictions prohibiting contractions in specific circumstances, there are no standards or rules prescribing when contractions must or must not be undertaken.

*(4) A quasi-judicial act determines the rules of law applicable, and the rights affected by them, in relation to past transactions, while a legislative act prescribes what the rule or requirement shall be with respect to future acts.*

When considering the contraction petition, the City Commission was not compelled to consider past transactions or any rules of law

10

applicable to them. Rather, its focus was entirely on the future impact of its decision whether to alter its municipal boundaries. *See* § 171.031(6), Fla. Stat. (2023) (defining a feasibility study as an analysis of "the economic, market, technical, financial, and management feasibility of the *proposed annexation or contraction*, as applicable"(emphasis added)).

In sum, the criteria and principles discussed above disprove the parties' assertion that enacting or declining to enact a contraction ordinance under section 171.051(2) is a quasi-judicial function. Rather, annexations and contractions are legislative acts, and for that reason the courts have long recognized that the sole procedure for challenging an alleged failure to comply with chapter 171 is pursuant to section 171.081—and *not* by common law certiorari.

### III. Conclusion

When, as here, a petition in the lower court "wholly fails to present a case authorizing the relief prayed for," the appellate court has a duty to raise the defect. *Smith v. Pattishall*, 176 So. 568, 575 (Fla. 1937). Such is the case even if the parties have ignored the deficiency. *Id.* Of course, this principle applies to appellate review of an order rendered by a court that lacked jurisdiction. *See Sims Crane & Equip. Co. v. Preciado*, 351 So. 3d 50, 51 (Fla. 1st DCA 2020) ("[A]n appellate court may raise subject matter jurisdiction concerns *sua sponte* even where neither party raises the issue."). Thus, in *Romero v. Wells Fargo Bank, N.A.*, 209 So. 3d 633, 634 n.1 (Fla. 2d DCA 2017), wherein the appellant challenged the denial of her motion to vacate a foreclosure judgment, this court sua sponte observed that the lower court had lacked jurisdiction to consider the motion because it was untimely. Therefore, the *Romero* court vacated the order denying the motion on its merits. *Id.* at 635.

11

Because *Romero* was a direct appeal, this court was empowered to direct the dismissal of the case on remand, and it did so. *Id.* However, on second-tier certiorari we lack authority to instruct the lower court to proceed in a particular way. *Miami-Dade County v. Omnipoint Holdings, Inc.*, 863 So. 2d 195, 198 n.2 (Fla. 2003); *G.B.V. Int'l Ltd.*, 787 So. 2d at 845. Accordingly, we simply quash the order that ruled on the merits of West Villagers' petition, fully confident that the circuit court will take appropriate action.

Quashed.

KHOUZAM and MORRIS, JJ., Concur.