# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

### 17-328 consolidated with 17-418

**THE SUVA CORPORATION, ET AL.**

**VERSUS**

**JANE RENEE JOHNSON SMITH, ET AL.**

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
ELEVENTH JUDICIAL DISTRICT COURT
PARISH OF SABINE, NO. 63,173 & NO. 64,615
HONORABLE STEPHEN BRUCE BEASLEY, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

**SHANNON J. GREMILLION**
**JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Sylvia R. Cooks, and Shannon J. Gremillion, Judges.

**AFFIRMED.**

John S. Bradford
Stockwell, Sievert, Viccellio, Clements & Shaddock, L.L.P.
P. O. Box 2900
Lake Charles, LA 70602
(337) 436-9491
COUNSEL FOR PLAINTIFF/APPELLANT:
Leon Lucien Languirand, Executor, Succession of Martha Ann Hardee
Languirand

Michael S. Coyle
Attorney at Law
Post Office Box 636
Ruston, LA 71273-0636
(318) 254-8200
COUNSEL FOR DEFENDANTS/APPELLANTS:
Jane Renee Johnson Smith
Leon Lucien Languirand, Executor, Succession of Martha Ann Hardee
Languirand
Trentice Van Johnson, Jr.
Hugh Clark Hinton
Samual Jackson Hinton
Robert Hugh Johnson

William A. Jones, Jr.
Attorney at Law
Post Office Box 2644
Ruston, LA 71273-2644
(318) 255-2944
COUNSEL FOR DEFENDANTS/APPELLANTS:
Hugh Clark Hinton
Samual Jackson Hinton
Robert Hugh Johnson
Trentice Van Johnson, Jr.
Jane Renee Johnson Smith
Leon Lucien Languirand, Executor, Succession of Martha Ann Hardee
Languirand

Charles E. Tabor
Gregorio, Chafin, Johnson, Poolson & Tabor, L.L.C.
7600 Fern Avenue, Building 700
Shreveport, LA 71105
(318) 865-8680
COUNSEL FOR PLAINTIFFS/APPELLEES:
The Suva Corporation
Hardee Family Properties, LLC
T. W. Hardee Properties, LLC

**GREMILLION, Judge.**

The defendants,[1] heirs to real property located in Sabine Parish, appeal the trial court's finding of a mutual mistake in a deed executed in 1949 by brothers, Hugh and Thomas Hardee, resulting in the plaintiffs[2] being declared the sole owners of tracts of land in question.[3] For the following reasons, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND[4]

In September 2010, the Suva plaintiffs filed a petition for declaratory judgment seeking to be declared the owners of certain immovable property located in Sabine Parish. In October 2010, the Suva plaintiffs filed their first amending and supplemental petition to the petition for declaratory judgment urging that a mutual error existed in the March 9, 1949 deed from Hugh to Thomas that omitted some property from the deed.[5] In response, the defendants filed peremptory exceptions of prescription, no right of action, and no cause of action. The Suva plaintiffs, thereafter, filed a second amending and supplemental petition to their

---

[1] The defendants are Jane Renee Johnson Smith, Trentice Van Johnson, Jr., Robert Hugh Johnson, Martha Ann Hardee Languirand, Hugh Clark Hinton, and Samual Jackson Hinton.

[2] The plaintiffs are all descendants of Thomas (or businesses comprised of Thomas's descendants). The Suva Corporation, LLC, Hardee Family Properties, LLC, and T.W. Hardee Properties, LLC, filed suit in 2010 (Suva plaintiffs). The Salamander Land, LLC and SHS Investments plaintiffs filed their petition for declaratory judgment in May 2012 (Salamander plaintiffs). We refer to them collectively as plaintiffs.

[3] These consolidated matters include docket numbers 17-328 (the Suva plaintiffs) and 17-418 (the Salamander plaintiffs).

[4] This factual background follows the history of the first-filed suit. Similar pleadings were filed by the Salamander plaintiffs once they filed their petition for declaratory judgment in 2012. Because the substantive matters are the same, we will not repeat the details of the proceedings.

[5] The first amending and supplemental petition stated:

> 39.
> The mutual error was some property was omitted from the deed including the following described property, to wit:
>
> The North Half of the Southeast Quarter of Section 10, Township 8 North, Range 11 West, Sabine Parish, Louisiana and the Southwest Quarter of the Southeast Quarter of Section 10, Township 8 North, Range 11 West, Sabine Parish, Louisiana.

petition for declaratory judgment pleading in the alternative ten years good faith acquisitive prescription and thirty years acquisitive prescription of the disputed property. In their third amending and supplemental petition, the Suva plaintiffs again noted the mutual error omitting the following described property:[6]

44.

The mutual error was that some property was omitted from the Deed including the following described property to-wit:

> The Southwest quarter of Northwest quarter of Section 15, Township 8 North, Range 11 West, Sabine Parish, Louisiana which property was subsequently transferred by the Deeds, Judgment of Possession and Partition as described in Plaintiff's original Petition to T.W. Hardee Properties, LLC.

The petition further urged that T.W. Hardee Properties, LLC and its ancestors had possessed the above property since 1947. The defendants filed a reconventional demand urging that the Suva plaintiffs had wrongfully received revenue from timber sales and oil and gas leases from the disputed property. In response, the Suva plaintiffs filed an exception of prescription.[7] [8]

---

[6] The original Suva petition sought a declaratory judgment naming:

> a) THE SUVA CORPORATION is the owner of the Southwest Quarter of the Southeast Quarter of Section 10, Township 8 North, Range 11 West, Sabine Parish, Louisiana.

> b) T.W. Hardee Properties, LLC is the owner of the Northeast Quarter of the Southeast Quarter of Section 10, Township 8 North, Range 11 West, Sabine Parish, Louisiana.

> c) Hardee Family Properties, LLC is the owner [of] the Northwest Quarter of the Southeast Quarter of Section 10, Township 8 North, Range 11 West, Sabine Parish, Louisiana.

[7] That exception was granted finding that any claims the plaintiffs-in-reconvention may have had against the defendants-in-reconvention were barred by liberative prescription of ten years.

[8] Later, the trial court vacated the judgment granting the defendants' peremptory exceptions of prescription and no cause of action and denied the exceptions based on its underlying findings that plaintiffs had no knowledge of the subject property until 2010 and, therefore, prescription could not have begun to run until then.

In August 2015, the Suva plaintiffs filed a motion to consolidate this action with docket number 17-418. The Salamander case was tried first. The Salamander petition described the disputed property as:

> Tract 1: The West Half of the Southwest Quarter of the Southwest Quarter of Section 1 and the Southwest Quarter of the Southwest Quarter of Section 3, all in Township 8 North, Range 11 West, Sabine Parish, Louisiana[.]

> Tract 2: The Southeast Quarter of the Southwest Quarter of Section 3, Township 8 North, Range 11 West, Sabine Parish, Louisiana[.]

At the conclusion of the case, the Salamander record was introduced into the Suva case. Following the submission of the documentary evidence to the trial court, it rendered a judgment in December 2016, in favor of all of the plaintiffs, finding that they are the sole owners of the property. The trial court issued extensive findings of fact and conclusions of law. The trial court concluded that the brothers omitted the disputed tracts by mutual mistake and reformed the 1949 deed to include the disputed tracts.

The defendants appeal the trial court's judgment and assign as error:

1. In order to reform a deed on the basis of mutual mistake and add undescribed tracts to the conveyance, Louisiana Courts have imposed an extraordinary burden of proof on plaintiffs, requiring the plaintiff to prove mutual mistake by "clear, and the strongest possible, proof;" therefore, it was error for the Trial Court to reform the 1949 Deed on what, at best, can only be characterized as inconclusive evidence.

2. It is well established that a deed, as the last expression of the parties' agreement, controls and supersedes whatever previous discussions or agreements may have taken place between the parties; therefore, the Trial Court erred when it imported the omnibus language contained in the Purchase Agreement into the 1949 Deed and used that imported omnibus language as the basis for adding the Disputed Tracts to the 1949 Deed.

3. In determining whether to reform the 1949 Deed and in deciding whether the Plaintiffs had carried their burden of proving mutual mistake by "clear, and the strongest possible, proof," the Trial Court was obligated to consider all the evidence; therefore, it was error for the Trial Court to disregard the facts that:

    a. The 1949 Deed did not include the omnibus language contained in the Purchase Agreement;

    b. Hugh Hardee retained other tracts of Sabine land he owned in 1949 and which he sold in 1953;

    c. In 1953, during Thomas's lifetime, he sold some of the land he had retained in 1949.

    d. Hugh Hardee gave Thomas Hardee his power of attorney to add any tracts mistakenly left off the 1949 Deed and Thomas Hardee exercised that power of attorney to add certain tracts, but did not use that power of attorney to add the Disputed Tracts.

## DISCUSSION

### *Standard of Review*

The defendants argue that we should review the record de novo because this case involves "contract interpretation." However, we have previously held that the determination of whether a mutual error existed such that contract reformation is warranted is a question of fact, and we will not disturb the trial court's findings unless it was clearly wrong. *See Teche Realty & Inv. v. Morrow*, 95-1473 (La.App. 3 Cir. 4/17/96), 673 So.2d 1145; *WMC Mortgage Corp. v. Weatherly*, 07-75 (La. App. 3 Cir. 6/13/07), 963 So.2d 413, *writ denied*, 07-1475 (La. 10/5/07), 964 So.2d 945. Accordingly, if reasonable people could reach the same conclusion after a review of the record, the trial court's finding cannot be clearly wrong even if, had we been sitting as the trier of fact, we may have reached a different conclusion. *Stobart v. State, Through Dep't of Transp. & Dev.,* 617 So.2d 880 (La.1993). The trial court issued extensive reasons for its findings, stating in part:

The 1949 Agreement and subject deed recorded March 17, 1949, was without question an omnibus designation translative of title of the subject tracts as it reflects the unequivocal intent of Hugh M. Hardee to sell to his brother, Thomas W. Hardee, Jr., "all of the immovable property owned by him as of July 31, 1947, in the Parish [] of . . . Sabine, State of Louisiana . . . [except for certain specified parcels]." . . . Based on the terms of the 1949 Agreement alone, the omnibus designation language therein serves as though the lands were specifically described in it. Albeit that a few stray parcels of the considerable collection of parcels transferred in the singular transaction, amounting to approximately 2500 acres, were not specifically described in the companion deed,[9] the omnibus designation language essentially cures that defect be it caused by error or not.

. . .

The agreement executed on March 9, 1949, contemporaneously with the subject deed, when read together, form the basis of the brothers' agreement. The 1949 Agreement expressly provides that Hugh was selling all of his property to Thomas. . . . Had there been intent to delete the Omitted Property from the sale, logic stands that it would have been likewise removed from the 1949 Agreement. It should be remembered that in rural Pleasant Hill, Louisiana in 1949, the ease and precision now afforded by computers and online conveyance records were then the subject of science fiction. Such an error could not be unexpected with the large swath of remote rural undeveloped land that was made subject of this transaction. Further, the fact that Hugh granted Thomas power of attorney, also contemporaneously executed with the 1949 Agreement and subject deed, to correct any problems with the subject deed, further buttresses the omnibus designation intent of the parties that Hugh was washing his hand of "*all of the immovable property owned by him as of July 31, 1947, in the Parishes of Caddo, DeSoto, Natchitoches, Red River, and Sabine, State of Louisiana, and in Miller County, Arkansas*" to the exclusion of specifically identified properties. Thomas Hardee employed that power of attorney to add a parcel of land,

---

[9] We note that there are various descriptions of the disputed property in the record. Prior to the trial court's ruling, it requested "precise descriptions of the subject properties each party understands is at issue." The trial court's judgment described the disputed property as:

The West Half of the Southwest Quarter of the Southwest Quarter of Section 1 and the Southwest Quarter of the Southwest Quarter of Section 3, all in Township 8 North, Range 11 West, Sabine Parish, Louisiana

and

The Southeast Quarter of the Southwest Quarter of Section 3, Township 8 North, Range 11 West, Sabine Parish, Louisiana.

5

Section 15, back into the 1949 Deed, a parcel adjacent to the Omitted Property. This court finds it very logical that as the Section 15 property was omitted "through error, oversight and inadvertence" from the 1949 Deed and was added into it, likewise was the Omitted Property here. The court concludes that the brothers failed to discover the remaining Omitted Property prior to their deaths.

### *Deed Reformation*

The moving party in a reformation action bears a heavy burden of proving a mutual mistake or error by clear and convincing proof. *Teche*, 673 So.2d 1145. An act of sale is usually a final expression of the parties' intent following a negotiation process. *Id.* An authentic act is full proof of the agreement it contains as against the parties. La.Code Civ.P. art. 1835. Reformation is an equitable remedy which is available to correct errors or mistakes in written instruments only when the instrument does not reflect the parties' true intent. *Teche*, 673 So.2d 1145; *Agurs v. Holt*, 232 La. 1026, 95 So.2d 644 (1957). A mutual mistake is

> a mistake shared by both parties to the instrument at the time of reducing their agreement to writing, and the mistake is mutual if the contract has been written in terms which violate the understanding of both parties; that is, if it appears that both have done what neither intended. The evidence of mutuality must relate to the time of the execution of the instrument and show that the parties then intended to say one thing and by mistake expressed another and different thing.

*Succession of Jones v. Jones,* 486 So.2d 1124, 1127 (La.App. 2 Cir.), *writ denied,* 489 So.2d 249 (La.1986). Parol evidence is admissible to prove the parties' true intent. *Catyb v. Deville*, 246 So.2d 41 (La.App. 3 Cir. 1971).

### *Evidence*

In this case, there are no living parties or witnesses to the contract. Therefore, the brothers' intent in creating the 1949 Deed must be gleaned from the documents and actions of the parties at the time.

6

The defendants argue that the trial court rewrote the 1949 Deed by adding the omnibus language from the Purchase Agreement to the Deed. The trial court found that since the two documents were executed contemporaneously, they must be read in "pari materia." The defendants argue that the best evidence of Hugh's lack of intent to convey all of his Sabine Parish land to Thomas is the fact that he retained ownership in other Sabine Parish land which he later sold in 1953 during Thomas' lifetime. The defendants argue that reformation of a sixty-seven-year old contract on such grounds jeopardizes the stability of land titles. They further argue that the omnibus "all my land in Sabine Parish" language found in the Purchase Agreement was intentionally excluded from the 1949 Deed, and that it easily could have been included since the same lawyer drafted both documents.

The plaintiffs, on the other hand, argue that the disputed property, although included in the 1949 Agreement, was unintentionally left out of the 1949 Deed which is detailed and massive, covering thousands of acres of land. The plaintiffs urge that the omission was not discovered until nearly sixty years later when a land man was trying to lease the property, and during the sixty years, the plaintiffs had been in continuous and uninterrupted control and possession of the disputed property. They further argue that the documents and facts surrounding the Deed unequivocally prove that Hugh intended to convey all of his partnership property to Thomas, and that the brothers were aware that some of the 2500 acres may not have been properly listed; thus, Hugh gave Thomas the specific power to correct any mistakes relating to the Deed. The plaintiffs point to the 1955 ratification executed by Hugh in favor of Skelly Oil Company relating to the disputed property in which Hugh affirmed that all bonus and rental moneys are to the be paid to Thomas.

<u>1949 Purchase Agreement</u>

The March 9, 1949 signed "Contract and Agreement" (Agreement), which was filed in the conveyance records on March 17, 1949, provides in part that Hugh "contracted and sold to [Thomas[10]] all of the immovable property owned by him as of July 31, 1947, in the Parishes of Caddo, DeSoto, Natchitoches, Red River and Sabine, State of Louisiana, and in Miller County, Arkansas, except the property owned by [Hugh] in Block 20, Block 34, and Block 35 of the Town of Pleasant Hill, Louisiana . . ."

The Agreement further conveyed to Thomas "all of [Hugh's] undivided interest in and to the partnership which existed between [Hugh] and [Thomas], and which was operated and carried on under the name of T.W. Hardee & Company . . ." Hugh further reserved "one-half (1/2) of his interest in the oil, gas and other mineral rights, in which reservation he agreed that [Thomas] would have unlimited right to execute oil, gas and mineral leases covering said property and receive and receipt for all bonus money . . ."

In the Agreement, Hugh executed an irrevocable power of attorney unto Thomas, making Thomas his "agent and attorney in fact for the purpose of executing any and all correction deeds and other documents necessary to cure and perfect titles to any of the immovable property owned by [Hugh] prior to and as of July 31, 1947." In consideration for the sale, Hugh paid Thomas $100,000 payable in four installments of $25,000.

The Agreement was signed by both Hugh and Thomas.

---

[10] The contract refers to the "Party of the First Part," i.e., Hugh and the "Party of the Second Part," i.e., Thomas. For ease of reference we will use their names rather than this language.

1949 Deed

An image of the Deed is included for reference below to show the complex descriptions of the vast amount of land conveyed from Hugh to Thomas. The Deed was also executed on March 9, 1949, and filed into the conveyance records on March 17, 1949.

STATE OF LOUISIANA

Parish of Sabine

BE IT KNOWN, That this day before me ___ J. S. Pickett, Notary Public in and for said Parish, duly commissioned and sworn, came and appeared

HUGH M. HARDEE, husband of Mamie Jackson Hardee,

who declared that ___ he ___ does ___ by these presents, GRANT, BARGAIN, SELL, CONVEY AND DELIVER, with full guarantee of title, and with complete transfer and subrogation of all rights and actions of warranty against all former proprietors of the property herein conveyed unto

THOMAS W. HARDEE, JR., husband of Eulalia Tucker Hardee,

PLAINTIFF'S EXHIBIT # 7

the following described property, to-wit:

Southeast Quarter of Northwest Quarter; Southwest quarter of Northeast quarter; and the North Half of the Northwest quarter of Southeast quarter of Section 26, Township 10 North, Range 12 West; Northeast quarter of Southeast quarter, and South half of Southwest quarter of Section 35, Twp. 10 North, Range 12 West; West half of the Southwest quarter of Section 35, Twp. 10 N. R. 12 West, Northwest quarter of Northwest quarter of Sec. 2; and Northeast quarter of Northwest quarter of Sec. 3, all in Twp. 9 N. R. 12 West; North half of North half of Southwest quarter of Sec. 6, Twp. 9 N. R. 11 West. Southwest quarter of Sec. 5; North 7/8ths of the Northwest quarter of the Northeast quarter of Sec. 6, Northwest quarter of the Northwest quarter of Sec. 8, and Northwest quarter of Northeast quarter; South half of Northeast quarter and Northwest quarter of Southeast quarter of Sec. 9, all in Township 9 North, Range 11 West. North half of Northwest quarter of Sec. 12, Twp. 9 North, Range 12 West. All that portion of the Southeast quarter of Section 19, Twp. 10 North, Range 11 West, lying South and West of the right of way of the Texas & Pacific Ry. Co, LESS AND EXCEPT the following described portion thereof: Beginning 229 feet North of the Northeast corner of the Southwest quarter of the Southeast quarter of Section 19, Twp. 10 North, Range 11 West, on the right of way of the Texas & Pacific Railroad, thence running South 930 feet, thence West 1320 feet, thence North 2025 feet, thence East 215 feet, along right of way of the Texas & Pacific railroad, thence South 47 degrees East with the West line of said right of way to the point of beginning. The East half of Section 20, Twp. 10 N. R. 11 West LESS 80 acres described as a tract of land beginning at the Northwest corner of the Northeast quarter of said section, running South 684 yards, thence East 632½ yds., thence North 684 yds., thence West 632½ yds. to the place of beginning, less 10 acres off the South side. Also, less the place in the Southwest corner known as the McGinty and Kornegy place, being 632¼ yds. East and West by 305 yds. North and South. Also, less 3 acres on the highway on the West side of the Southwest quarter of the Northeast quarter. Also 55 yds. off the West side of the West half of the Northwest quarter, Section 21, Twp. 10 North, Range 11 West. North half of the Northeast quarter; Northwest quarter; North half of Southwest quarter, and Southwest quarter of Southwest quarter of

41

Section 30, Twp. 10 North, Range 11 West.

The South 3/4ths of the Southeast quarter of the Southwest quarter of Section 31, Twp. 10 North, Range 11 West. The West half of the Southwest quarter, and South half of Southwest quarter of Northwest quarter of Section 32, Twp. 10 V. R. 11 West. A tract of land beginning at the Southwest corner of the Southwest quarter of Northwest quarter, thence running North 188½ yds., thence East 385 yds., thence South 188½ yds., thence West 385 yds. to the place of beginning, in Section 25, Twp. 10 North, Range 12 West. Southeast quarter of Northeast quarter; Northwest quarter of Northeast quarter; Southeast quarter of Northwest quarter; East half of Southwest quarter; and North one-fourth of the Southeast quarter that lies West of the road, all in Section 24, Twp. 10 North, Range 12 West. Northeast quarter; East half of Northwest quarter; Southeast quarter of Southeast quarter; Frl. West half of Southwest quarter that lies within Lots 2 and 3 of the Las Ormigas Grant; the East 1/8th of the Southwest quarter of the Northwest quarter; and a tract beginning 55 yds. West and 55 yds. South of the Northeast corner of the Southwest quarter of the Northwest quarter, and running thence West 128½ yds., thence South 188½ yds., thence East 128½ yds., thence North 188½ yds. to the place of beginning, all in Section 25, Twp. 10 North, Range 12 West. The Southwest quarter of the Northeast quarter; Southeast quarter of Northwest quarter; South 3/4ths of the Northeast quarter of Southeast quarter; Southeast quarter of the Southeast quarter; West half of Southeast quarter; and Southwest quarter of Southwest quarter, less the North three acres thereof; and an undivided 2/5ths interest in all those portions of the South half of the Northeast quarter of the Northeast quarter; Southeast quarter of the Northeast quarter, and North one-fourth of the Northeast quarter of the Southeast quarter lying West of the Las Ormigas Grant line, all in Section 26, Township 10 North, Range 12 West. The North half of the Northeast quarter that lies North of the road in Section 35; and the Northwest quarter of the Northwest quarter that lies West of the Grant line in Section 36, Twp. 10 North, Range 12 West.

Also, the following described property situated in the Town of Pleasant Hill, Pleasant Hill, Sabine Parish, Louisiana: All of Block 17; Lots 7, 8, 9, 10, and 11 of Block 29 North of the road; Lots 3, 4, 5, 6, and 7 of Block 50; Lots 1, 2, 3, fractional lot 9, Lots 10, 11 and 12 in Block 55, Lots 1, 2, 3, 4, 5, and 6, and lots 16, 17 and 18 of Block 15; Lot 12 of Block 49, LESS AND EXCEPT West 5 feet of the East 25 feet thereof; Beginning at a point on the line between Lots 11 & 12 of Block 49 of the Town of Pleasant Hill, Louisiana, where a line 12 feet to the East and right of and parallel to the East side of the concrete covering to the grave of Mrs. J. H. Hardee, intersects said line between said Lots 11 & 12, thence run along said line parallel to the right and East side of said grave to a point where, a line four feet to the S. of and parallel to the concrete covering at the head of the grave of the said Mrs. J. H. Hardee, intersects said line, thence run along said line parallel to the S. end and head of said concrete covering the grave of the said Mrs. J. H. Hardee in a westerly direction to the alley, thence along the East side of the said alley to the line between said lots 11 and 12, thence along the line between said Lots 11 and 12 to the place of beginning. A certain plot of ground described as beginning at NW corner of Mary Stovall's property in the town of Pleasant Hill, La. and running in a Westerly direction 140 feet, thence South 100 feet, thence East 140 feet, thence North 100 feet to place of beginning. Frl. Blocks No. 1, 2 and 3; Lots 1, 2, 3, 4, 5, 6, 7, 8, 9, and Lots 16, 17 and 18 of Block 7; Lots 1, 2, 3, 4, 5, 6, and 7, and Lots 12, 13, 14, 15, 16, 17, and 18 of Block 8. Also, commencing at the SW corner of SE¼ of NW¼ of Section 29, Township 10 North Range 11 West and running West on North line of the town of Pleasant Hill, 17-15/100 chains to the right of way of the T & P RR Thence North 35 degrees West along side of said right of way 7-18/100 chains to the boundary line fence of W. C. Davis. Thence running the meanderings of said fence as follows: North 53 degrees East 4-88/100 chains, thence South 57 degrees East 1-60/100 chains, thence South 30 degrees East 2-17/100 chains, thence South 41 degrees East 1 chain, thence South 54 degrees East 3 chains, thence South 70 degrees 50 links, thence South 33 degrees East 1 chain, thence South 80½ degrees 11-12/100 chains to place of beginning, containing 5.25 acres, more or less.

The vendor reserves one-half of his undivided interest in the oil, gas or other minerals that may be produced from the property herein conveyed; it being understood that this reservation is a reservation of royalty rights; and delivery of said royalties to be made to the vendor herein in the same manner as is provided for the delivery of royalties by any present or future mineral lease affecting said lands. The vendee herein is hereby granted the right to collect and retain all rentals paid in connection with any lease or leases that now affect any of the above described property. And the vendee is further granted the right to grant future leases affecting said lands so long as there shall be included therein, for the benefit of the vendor, his heirs and assigns, the royalty rights herein conveyed; and the vendee is further granted the right to collect and retain all bonuses and rentals paid for or in connection with any future lease or leases covering all or any part of the property herein conveyed; and it is further provided that no lease shall be granted on said property which shall provide for the payment of less than one-eighth of the production of oil, gas or other minerals.

TO HAVE AND TO HOLD said described property unto said purchaser, ____his____ heirs and assigns forever.

This sale is made for the consideration of the sum of __TWENTY-EIGHT THOUSAND, FIVE__ __HUNDRED EIGHTY-FIVE AND 24/100__ — — — — — ($28,585.24) — — — — — — — — Dollars cash in hand paid, the receipt of which is hereby acknowledged.

The certificate of mortgage is hereby waived by the parties, and evidence of the payment of taxes produced.

DONE AND PASSED at my office, in said Parish of ____Sabine____ ____in presence of ____Margaret E. Pickett____ and ____Alice Mae Davis____ competent witnesses, on this the ____9th____ day of ____March____ A. D. Nineteen Hundred and ____Forty-Nine.____

ATTEST:

*Margaret H Pickett*
*Alice Mae Davis*

*Hugh M. Hardee*

*Pickett*
Notary Public.

43

1949 Power of Attorney

A separate "Power of Attorney," dated March 9, 1949, was also recorded on

March 17, 1949, in which Hugh declared Thomas to be

> his true and lawful agent and attorney in fact, . . . to execute any and all correction deeds, documents and other instruments necessary to perfect any and all land title to any immovable property owned by said Hugh M. Hardee prior to July 31, 1947, situated in the Parishes of

11

Sabine, Desoto, Red River and Caddo, State of Louisiana, which authority herein conveyed is irrevocable.

1950 Correction Deed

In December 1950, pursuant to the power of attorney executed by Hugh in favor of Thomas, Thomas executed a Correction Deed that added one of the omitted tracts[11] that was included in the 1949 Agreement. The Correction Deed affirmed Hugh's reservation of 50 percent of the mineral royalties realized from the property. The Correction Deed clearly incorporates the substance and language found in the Agreement. The Correction Deed[12] stated in pertinent part:

WHEREAS, on the 9th day of March, 1949, [Thomas] executed a contract with Hugh M. Hardee, wherein it was agreed that Hugh M. Hardee would convey to him all of the real estate, or immovable property, owned by him except certain property situated in the Town of Pleasant Hill, Louisiana; and,

WHEREAS, Pursuant to the terms of said contract the said Hugh M. Hardee authorized him, the said Thomas W. Hardee, Jr., a power of attorney duly executed to execute any and all correction deeds, documents and other instruments necessary to perfect the title to any and all lands to be conveyed according to the terms of said contract, as will more fully appear from said power of attorney which is recorded . . . .

WHEREAS, through error, oversight and inadvertence there was omitted from said deed dated March 9, 1949 and recorded under Instrument No 128,625, as aforesaid, the following described property situated in the parish of Sabine, Louisiana, to-wit:

The Southwest Quarter of the Northwest quarter of Section fifteen (15), township eight (8) north, Range eleven (11) west.

NOW, THEREFORE, in order to carry out the original intention as expressed by the said Hugh M. Hardee and Thomas W. Hardee, Jr. in said contract dated March 9, 1949 . . . .

---

[11] The parties stipulate that this tract, located in Section 15, is not in dispute.

[12] We note that there are multiple spacing and typographical errors related to the use of a manual typewriter that do not affect substance, which we have taken the liberty of correcting for ease of reading.

Skelly Oil Ratification

On September 15, 1955, Thomas granted an Oil, Gas and Mineral Lease in favor of Skelly Oil Company on Section 10 of the omitted property.[13] On September 29, 1955, Hugh executed a "Ratification" of the lease, which stated:[14]

> This the said Hugh M. Hardee hereby ratifies and confirms said lease the same as if he was a lessor in said lease and hereby stipulates that all bonus and rental moneys are to be paid to Thomas W. Hardee, Jr. and that he, the said Hugh M. Hardee, is to receive his proportionate part of the royalties due and payable under said lease.

> That the said Hugh M. Hardee hereby ratifies and confirms the lease referred to above in all of its terms and conditions.

Plaintiffs argue that the ratification is important, because the only documents giving Thomas the right to receive bonus and rental payments are the 1949 Agreement and the 1949 Deed, and that Hugh would not have ratified it if he did not believe that the disputed property was part of 1949 Deed. The trial court agreed, finding:

> This fact indubitably suggests that at the time of the ratification, Hugh Hardee thought the omitted properties were included in the [subject deed]. This court is at sea to come up with a plausible alternative explanation. This court's conclusion is buttressed by the testimony of Defendants' expert, Damon Weger, who not only stated that the 1949 Agreement and the 1949 Deed were the only documents that gave Thomas the right to receive bonus and rental funds, but that Hugh Hardee's fifty-percent mineral reservation would require such a ratification. This further propels the court to conclude that the omitted properties were meant to be in the subject deed per the 1949 Agreement.

---

[13] More particularly, the lease in favor of Skelly Oil Company covered:

> The North Half of the Southeast quarter and the Southwest quarter of the Southeast quarter of Section 10, Township 8 North, Range 11 West[.]

[14] We note that there are multiple spacing errors related to the use of a manual typewriter that do not affect substance, which we have taken the liberty of correcting for ease of reading.

Multiple defendants testified via deposition that they had no knowledge of the disputed property until 2010, when contacted by a land man. The record also included tax bills showing that Thomas and his descendants have always paid the tax bills associated with the disputed property. Further, numerous transactions such as partitions and successions involving the disputed property were carried out by Thomas's heirs.

Based on our review of the record, we find that reasonable people could easily conclude, as the trial court did, that the plaintiffs proved by clear and convincing evidence that the disputed property was omitted by mutual mistake of the brothers, based on the simultaneously executed 1949 Purchase Agreement and Deed, the Correction Deed, and the Skelly Oil Ratification document. Further, the treatment of the property following the brothers' deaths and the defendants' stipulation that they had no prior knowledge of the omitted property supports a finding that Hugh intended to convey this property to Thomas as part of the original Agreement. Furthermore, the defendants' reliance on the fact that Hugh owned other property in Sabine Parish ignores the fact that the deed intended to convey all of the *partnership*-owned property in Sabine parish. The disputed property was adjacent to other partnership property that was inadvertently omitted. The Skelly Oil ratification further buttresses plaintiffs' claims that Hugh intended to convey all of the property included in the Agreement and that the omitted parcels resulted from mutual error. Accordingly, we find no error in the trial court's ruling reforming the Deed and declaring the plaintiffs the sole owners of the tracts.

**CONCLUSION**

The judgment of the trial court reforming the 1949 Deed to include the omitted tracts and placing the plaintiffs in full possession of the omitted property is affirmed. All costs of this appeal are assessed against the defendants-appellants, Jane Renee Johnson Smith, Trentice Van Johnson, Jr., Robert Hugh Johnson, Martha Ann Hardee Languirand, Hugh Clark Hinton, and Samual Jackson Hinton.

**AFFIRMED**.